ESTATE OF LAKE: CHILDREN'S HOME AND AID SOCIETY OF WISCONSIN, Appellant, vs. FIRST NATIONAL BANK OF JANESVILLE, WISCONSIN, Administrator, Respondent.

*February 9—March 6, 1934.*

For the appellant there was a brief by *R. M. Rieser,* attorney, and *Olin & Butler* of counsel, all of Madison, and oral argument by *Mr. Rieser.*

For the respondent there was a brief by *Nolan, Dougherty, Grubb & Ryan,* and oral argument by *Roger G. Cunningham,* all of Janesville.

WICKHEM, J. The testatrix died in 1932, leaving an estate of $35,774.33, and in addition certain real estate which was sold during the course of the administration proceedings for $8,925. The deceased had never married. She left surviving her two brothers, a sister, and Frances Lake Wilsey, a niece, daughter of a deceased brother. In connection with the petition for final settlement the administrator with will annexed asked for a construction of the provisions of the will and for instructions with reference

to making settlement under certain provisions of the will and for final distribution of the estate. The will was executed February 11, 1915. Testatrix bequeathed to her sister, Mrs. Elizabeth Burt, of Oklahoma City, Oklahoma, the use of $8,000 during her life. "At her death the said $8,000 is to go to 'The Children's Home Finding Society of Wisconsin.' . . ." To her brother, Jacob Lake, she bequeathed the use of $8,000 during his life; at his death the said $8,000 to go to his children, share and share alike. To her brother, William Lake, she gave $8,000 during his life, this sum to go to his children at his death, share and share alike. To Frances Lake, only child of her deceased brother, she gave the sum of $500; to J. A. Burt, Jr., son of Elizabeth Burt, the sum of $500. She left $300 to be invested and the income used to care for her cemetery lot. Then followed bequests of $500 each to Belle Gosling, a friend, to the Wisconsin Woman's Christian Temperance Union, and the Wisconsin Woman's Suffrage Association. The eleventh clause of the will, which gives rise to the questions here involved, reads as follows:

"Eleventh. At this time I have about $25,000 beside real estate and about $700 due in about a month. I have not given so much to Austin and Frankie because they now have so much money, or property, or prospective property; not because I do not care for them as for other nephews and nieces.

"Whatever remains after above named sums have been given and donations I left in safe box for others, are taken and all bills paid, if any (I owe nothing to any one at this time), divide the remainder proportionally; or if by loss to my estate or personal property divide proportionally."

The will contains no residuary clause, and the estate of testatrix, at the time of her death, exceeded the bequests heretofore mentioned by a substantial amount. It was the conclusion of the county court: first, that the legacy of $300

for maintenance of the cemetery lot lapsed for the reason that it was intended only to provide perpetual care for the lot, and that the decedent during her lifetime made ample provision for this care; that Belle Gosling predeceased the testatrix, leaving no issue, and that her legacy consequently lapsed; that the Wisconsin Woman's Suffrage Association had no present existence and that this legacy lapsed. The court found that the Wisconsin Woman's Christian Temperance Union and the Children's Home Finding Society of Wisconsin were misnomers, and that it was the intention of the will to bequeath to the Woman's Christian Temperance Union of Wisconsin and Children's Home and Aid Society of Wisconsin, respectively. The court found that the protection of the remaindermen required the appointment of a trustee to administer the three legacies of $8,000 each, as to each of which there was a remainder, and there having been no trustee named in the will, the First National Bank of Janesville, Wisconsin, was appointed as such trustee.

With reference to clause eleven, the trial court found that the will indicates an intention upon the part of the testatrix to limit bequests to those other than relatives, to the specific provisions in their behalf. For example, as applied to the appellant the trial court finds that it was the intention of testatrix to limit the Children's Home and Aid Society to the $8,000 remainder specifically given to that society. The trial court was further of the view that it was not the intention of the testatrix to set up any trusts in the surplus disposed of by paragraph eleven, and that no trusts are necessary for carrying out the purposes of the will as disclosed by this paragraph. The court construed the will to give the surplus referred to in paragraph eleven to the surviving sister, two brothers, and the daughter of a deceased brother, Frances Lake Wilsey, absolutely and in equal shares. This construction cannot be sustained. At the time of executing

the will the testatrix according to her own estimate, had "about $25,000 beside real estate and about $700 due in about a month." She made bequests in the total sum of $25,000 to her sister, her brothers, her nephew and her niece, and followed this with small bequests aggregating $1,800. Testatrix drafted her own will, and it is clear that she used her personal property as the basis of distribution, first, because it was more certain in value, and second, because it constituted the bulk of her estate. Having disposed of a sum slightly in excess of her personal property, it is clear from the entire will, and particularly from an examination of paragraph eleven, that she then considered the relation between her entire estate and the amounts bequeathed. It occurred to her that her estate at the time of her death might be (as it was then) somewhat more than enough to pay the legacies, and that, on the other hand, by reason of losses it might be inadequate to meet the legacies. In view of this she provided that if there was a surplus it was to be divided "proportionally" and that a loss was to be distributed in the same manner. This was the sole purpose of the paragraph, which clearly evidences an intent that any surplus of the estate over the amount theretofore bequeathed be distributed to each beneficiary (with one exception to be hereafter discussed) in the proportion that his or her or its gift bears to the total of the legacies. The quality of the gift to each legatee was in no way affected by paragraph eleven. The result was merely to add to the amount of the legacies. The terms and conditions of the gift of the surplus are the same as those of the original gift. Applying this to the bequest to Elizabeth Burt with remainder to appellant, the surplus goes to Elizabeth Burt as a life estate, and to appellant in remainder, just as the original gift of $8,000 did.

It has been stated that there is one exception to the foregoing comment. That is the bequest of $300, to be kept at interest and invested and the income used to care for tes-

tatrix's cemetery lot. This clause contains sufficient internal evidence of testatrix's view that $300 is enough to accomplish the purposes of the bequest. It is not a bequest to any beneficiary in whose welfare the testatrix was interested, but the setting apart of a definite sum of money for a definite and explicitly described purpose. It seems clear that there was no intention that this bequest be increased or decreased by the operation of paragraph eleven.

The only other question herein raised relates to paragraph ten of the findings of the trial court. In accordance with its view as to the intention of the testatrix, the trial court found that Jacob Lake and William Lake, brothers of testatrix, and beneficiaries under paragraphs three and four of the will, respectively, each take an undivided one-fourth of the residuum of the estate, and that since this share is more than sufficient fully to pay and discharge certain indebtedness of Jacob and William to the estate, the court directs "that advancements heretofore made to these people be calculated and equalized and the residuum divided accordingly." It is assumed by both parties to this appeal that if the trial court was in error in holding that Jacob and William Lake merely take life estates in the surplus, it was also in error in offsetting the debts of Jacob and William against their share in the residue. We cannot agree to this conclusion. As evidence of William Lake's obligation to testatrix, the record contains a certificate, dated September 8, 1921, signed "William Lake," which certifies that decedent advanced to him $1,000, to be repaid with interest at four per cent. at some future time, "or amount taken from my share, or share of my heirs, from estate." There are similar certificates signed by Jacob Lake, certifying to advances by testatrix of various amounts, with identical provisions as to the terms and source of repayment. These certificates indicate that it was the intention of the parties at the time of their execution that the items of indebtedness evidenced thereby were to be offset not merely

against the share of the debtor but that of his heirs. The certificates were all executed after the will was made and published, and throw no light upon the intention of testatrix so far as the will is concerned. They do, however, limit the obligation of the debtors, and indicate that if the sums owed are not paid until the death of testatrix, they are to be charged against the share of the debtor and his heirs. While the word "heirs" may not with strict accuracy describe the remaindermen, it is evident in this case that it was intended to apply to them or at least to include them. At the time the certificates were given, testatrix had already made provision for her brothers by giving each of them a life estate with remainder to their children. She followed this by making advances to the brothers and accepting promises that if the sums were unpaid at her death, they were to be repaid out of the share of each brother "or his heirs." In view of the provisions already made in her will, it is concluded that the word "heirs" was intended to refer to those already designated as remaindermen, and that the only form in which repayment was contemplated was by reducing the corpus of the gift, thus reducing the share of both life tenant and remainderman. Whatever the scope of the term "heirs," it is broad enough to include and bind the children of the debtor, and they are the remaindermen in this case. By the terms of the certificates the debts are to be deducted from the *share* of the debtor and his heirs. This evidences an agreement by the debtor, binding upon his heirs, that the corpus of any gift under the will be reduced by the amount of the debt. The result is that it is proper presently to deduct from the ascertained legacies to Jacob and William Lake, respectively, the amount of the debt of each to the estate, the diminished sums to be held in trust, as heretofore indicated, during the life of each life tenant, and then to go to the remaindermen absolutely, in accordance with the terms of the original bequests. It hardly needs to be added that

the loans in question are properly inventoried as assets of the estate, to be taken into account in the final distribution, and that each bequest affected is to be satisfied in part by a discharge of the debt of the life tenant.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.