BOARD OF EDUCATION OF GRAND RAPIDS *v.* STATE TAX COMMISSION.

1. TAXATION—REALLOCATION BY STATE TAX COMMISSION—EQUALLY DIVIDED COURT.

Order of State tax commission reallocating millage to county, city, and city board of education is affirmed by an equally divided court (Const. 1908, art. 10, § 21, adopted in 1932; Act No. 62, §§ 5, 9–11, 15, 17, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.]; Act No. 280, Pub. Acts 1939).

2. CONSTITUTIONAL LAW—ALLOCATION OF PROPERTY TAX MILLAGE—CERTIORARI.

The power of the Supreme Court to issue original writs of certiorari, vested in it by the Constitution, cannot be divested by legislative action; hence, provision of property tax limitation act that final orders allocating millage between local units should not be reviewable in any court by certiorari is void (Const. 1908, art. 7, § 4; Act No. 62, § 17, Pub. Acts 1933).

3. COSTS—ALLOCATION OF PROPERTY TAX MILLAGE—PUBLIC QUESTION.

No costs are allowed on certiorari from State tax commission in proceeding relative to allocation of millage between local units, a public question being involved (Const. 1908, art. 7, § 4; art. 10, § 21, adopted in 1932; Act No. 62, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.]).

Appeal from State Tax Commission. Submitted October 6, 1939. (Docket No. 74, Calendar No. 40,725.) Decided November 9, 1939. Rehearing denied December 20, 1939.

Kent county tax allocation board made an order allocating property tax rate to City of Grand Rapids, Kent County, and Board of Education of Grand Rapids. City of Grand Rapids appealed to State

Tax Commission. Board of Education of Grand Rapids reviews order of State Tax Commission by appeal in the nature of certiorari. Affirmed by equally divided court.

*L. H. Grettenberger,* for Board of Education of Grand Rapids.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *Kenneth G. Prettie,* Assistants Attorney General, for defendant State Tax Commission.

*Harold B. Corwin,* for City of Grand Rapids.

WIEST, J. This is certiorari to review action of the State tax commission in reallocating the mill tax between units in Kent county contrary to that made by the Kent county allocation board.

Article 10, § 21, of the Constitution, adopted in 1932, provides:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property."

This limitation caused the legislature to provide methods and means for allocation in counties.

Act No. 62, § 5, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1937 (Stat. Ann. 1939 Cum. Supp. § 7.65), created a county tax allocation board for each county in the State. Such a board exists in the county of Kent, with power to apportion the millage tax to be levied for the county of Kent, the city of Grand Rapids, and the Grand Rapids board of education, styled local units.

Act No. 62, § 9, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1935, § 3551–29, Stat. Ann. § 7.69), provides:

"Each local unit as defined in this act shall prepare each year a budget containing an itemized statement of its proposed expenditures and estimated revenues, covering all its departments and activities. Such budget shall cover that fiscal year of the local unit, the expenditures of which year are to be met wholly or partly from the next tax levy."

Section 10 (Comp. Laws Supp. 1935, § 3551–30, Stat. Ann. § 7.70) provides:

"Such local unit shall file its budget and statements provided for in the preceding section with the board on or before the second Monday in May of each year. * * * If any local unit shall fail to file its budget and statements by such date, the board shall proceed with its duties and act on the basis of such information with respect to such local unit as it may derive from other sources."

Section 15 (Comp. Laws Supp. 1935, § 3551–35, Stat. Ann. § 7.75), requires the county board to make, on or before the first Monday of June, a preliminary order approving a maximum tax rate for each local unit and give notice thereof to each unit, and the date for final hearing and—"at such final hearing any local unit may object by its duly authorized officers or agents to the maximum tax rate as ordered by the board and request a redetermination thereof."

Section 17 (Comp. Laws Supp. 1935, § 3551–37, Stat. Ann. § 7.77) provides:

"Within fifteen days after the giving of notice of such final order any aggrieved local unit may appeal in writing to the State tax commission. The State tax commission shall give at least ten days' written notice to all interested parties of the time and place for a hearing on such appeal, and at the time set for such hearing shall give all such parties an opportunity to be heard. The State tax commission shall apply the method provided in section eleven hereof

for the division of the net limitation tax rate, and shall have power, in case it shall find a material mistake of fact, fraud or an error of law in the proceedings under this act, to make an order increasing or decreasing the maximum tax rate of any local unit as ordered by the board, and adjusting the tax rates of other local units affected by such action. The State tax commission shall give written notice of its order to all interested parties within fifteen days after such hearing. The order of the State tax commission, or of the board in case of no appeal, shall be final and shall not be reviewable in any court by mandamus, certiorari, appeal or any other method of direct or collateral attack, nor shall any court of this State issue any injunction to prohibit the carrying out of any order made under this act.''

The mentioned local units presented their budgets to the county board and that board, by final order, approved the maximum tax rate as follows: city of Grand Rapids, 5.7 mills; board of education of the city of Grand Rapids, 5.7 mills; county of Kent, 3.6 mills.

The city of Grand Rapids appealed from such allocation to the State tax commission. The State tax commission held hearings, heard evidence and made the following allocation: city of Grand Rapids, 6.2 mills; board of education, 5.3 mills; county of Kent, 3.5 mills. Thereupon the board of education of the city of Grand Rapids applied to this court for leave to appeal in the nature of certiorari, and such leave was granted.

The State tax commission takes the position that no court review is permissible because its action was purely administrative, and points to the ban placed by the legislature in section 17 above quoted.

The Constitution (1908), art. 7, § 4, provides:

''The Supreme Court shall have a general superintending control over all inferior courts; and shall

have power to issue writs of error, *habeas corpus,* mandamus, *quo warranto, procedendo* and other original and remedial writs, and to hear and determine the same. In all other cases it shall have appellate jurisdiction only.''

The power of this court to issue original writs of certiorari is vested in the Constitution and cannot be divested by legislative action.

The review here, in the nature of certiorari, is to determine whether the State tax commission has, on the record of its proceedings, exceeded statutory bounds.

The proceedings of the State tax commission in the instance at bar, even if purely administrative in character, are subject to review under the certiorari powers of this court to the extent of examining whether in the record of its action it exceeded its statutory jurisdiction.

Where the legislature has fixed the jurisdiction within which the State tax commission may act, its jurisdiction is limited thereto and departure therefrom is action without power, wholly void and reviewable by certiorari. On appeal the State tax commission may not make review *de novo,* for its jurisdiction is limited to consideration of material mistakes of fact, fraud, or errors of law on the part of the county board in matters presented to and acted upon by that board. Unless the material mistake of fact, fraud, or error of law on the part of the county board is found and expressly so noted by the State tax commission, it may take no action contrary to the determination of the county board.

In the case at bar no fraud is claimed. The county board made allocation upon the budgets presented, and no mistake of fact on the part of that board is alleged or proven.

July 5, 1939, the State tax commission made the following order:

"After hearing arguments from all interested parties at the time and place aforesaid on the tax allocation made, and giving due consideration to the respective claims of all interested parties, it is ordered that the following tax allocation be made to the following local units:

"Schools, 5.3 mills;

"County of Kent, 3.5 mills;

"City of Grand Rapids, 6.2 mills."

This order on its face does not disclose any finding of mistake of fact, fraud or an error of law in the proceedings of the county board and is no more than an assumption of power to act *de novo*.

The notice of the order, given by the State tax commission to the local units, stated:

"The allocation made by the State tax commission gives consideration to legislation passed by the 1939 legislature which places part of the burden for the care of afflicted children on the county.

"Second. That the cost of administration of all these forms of relief financed jointly by the State, county, and other local governments must be paid by the county.

"Third. That the appropriations for soldiers' relief and mothers' pensions are county-wide charges and that the county of Kent, having not abolished the distinction between city, township, and county poor, the units are subject to the charge-back cost from the infirmary, and burial of indigents, and that the costs of medical relief and hospitalization may be borne jointly by the county, city and townships.

"Fourth. That the county may continue the appropriation of $20,000 per month for direct relief during the remainder of the fiscal year of 1939, and that the board of supervisors may vote to contribute the necessary amount during the fiscal year 1940.

"Fifth.   That the county of Kent will have a sum
on hand in its general fund as of December 31, 1939,
of which a sum of $256,000, or the equivalent of one
mill on the county at large, can be used to supple-
ment the tax levy and the anticipated revenues which
should be sufficient to operate the county and its
welfare activities for the year 1940 without incur-
ring a deficit.

"Sixth.   That the city of Grand Rapids, in its
tentative budget, made no provisions for certain
contributions to the welfare cost, and must have
some funds available for works progress adminis-
tration projects in order to keep men employed;
therefore its millage was increased 5/10 of a mill
which, in the opinion of the commission, is a fair
recognition of the actual necessary costs of govern-
ment of the units involved."

The county board was not asked to allow millage
for works progress administration expenditures and
the State tax commission, therefore, could not find
its nonallowance a material mistake of fact on any
matter before the county board.

The State tax commission points to Act No. 62,
§ 11, subd. (f), Pub. Acts 1933, as amended by Act
No. 30, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws
Supp. 1935, § 3551-31, Stat. Ann. § 7.71), as con-
ferring general supervisory power over action of
the county board.   That subsection and its immediate
companion, subd. (e), read as follows:

"(e)   The board shall approve minimum tax rates
as follows: for the county, three mills; for school
districts, four mills; for townships, one mill: Pro-
vided, That if the average tax rate levied for the
operating purposes of any county or school district
or township for the last three fiscal years shall be
less than such minimum tax rate, such average tax
rate shall be the minimum tax rate allowed to such
local unit: Provided further, That no local unit

shall be allowed a tax rate in excess of what would be required according to its proposed budget.

"(f)   The board shall divide the balance of the net limitation tax rate between all local units after due consideration of the needs of the several local units, the importance to the public of functions of local units which might have to be curtailed, the need of local units for construction or repair of public works, the proposed or accomplished transfer of functions from one local unit to others, and any other facts or matters concerning the operations of local units which the board may deem relevant: Provided, That no local unit shall be allowed a tax rate in excess of what would be required according to its proposed budget.   The board shall approve a maximum tax rate for each local unit consisting of the minimum tax rate, if any, provided in subsection (e), added to the tax rate determined under this subsection."

Primarily the quoted subsections are for direction of the county board, but upon appeal— "the State tax commission shall apply the method provided in section 11 hereof for the division of the net limitation tax rate" (section 17), and, when so applied, then, and then only "in case it shall find a material mistake of fact, fraud or an error of law in the proceedings under this act, to make an order increasing or decreasing the maximum tax rate of any local unit as ordered by the board, and adjusting the tax rates of other local units affected by such action" (section 17).

This does not enlarge the jurisdiction of the State tax commission and enable it to act *de novo,* but merely provides remedy in case of a finding of a material mistake of fact, fraud, or an error of law in the proceedings before the county board and, therefore, orders an increase or decrease in the maximum tax rate of any local unit to enable such

unit, and others affected thereby, to revise budgets and amend and alter its tax levy to the extent made necessary by such action. Upon the face of its proceedings the State tax commission acted without jurisdiction and the allocation made by the county board stands unaffected thereby. The reallocation by the State tax commission should be vacated.

The matters involved being of public interest there will be no costs to either party.

SHARPE, POTTER, and CHANDLER, JJ., concurred with WIEST, J.

NORTH, J. I cannot agree with the construction given by Mr. Justice WIEST to Act No. 62, § 17, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1935, § 3551-37, Stat. Ann. § 7.77). Section 17 of the amended act provides for an appeal from the county tax allocation board to the State tax commission "in case it shall find a material mistake of fact, fraud or an error of law *in the proceedings under this act.*" My Brother limits such "mistake of fact, fraud or an error of law" to such mistakes or fraud "on the part of the county board." It seems clear to me that the act should not be so read or construed. Instead, the express provision is that on appeal review by the State tax commission may be had whenever it finds there has been a mistake of fact or law or fraud "in the proceedings under this act."

The real parties in interest in the millage allocation are the school district, the city, and the county. It is a matter of public, rather than private, concern that the allocation should be just and equitable, so that each governmental unit may properly function. Of necessity the needs and claims of each corporate unit must be presented through its representatives to the county board. This is done by the prepara-

tion and presentation of a budget of the respective units to the county board. Public welfare requires that the preparation of these budgets should be without mistake of fact or law and without fraud; otherwise a just and equitable allocation of the tax mills cannot be accomplished. Wisely and justly the law provides that if ''in the proceedings'' incident to arriving at the millage allocation by the county board there is a material mistake of fact or law or fraud on the part of any of the agencies concerned in the proceedings before the local board, an aggrieved party may have redress through appeal to the State tax commission.

It is not claimed the State tax commission may substitute its judgment for that of a local board as to what constitutes a fair and just allocation, provided ''in the proceedings'' before the local board no one of the agencies engaged in presenting and determining the question of allocation has perpetrated a fraud or made a material mistake of fact or law. However, if at the hearing before the local board the representatives of one of the three governmental units through the budget presented or otherwise fraudulently represented to the local board that the cost of that unit's activities during the preceding fiscal year had been twice what it was in fact, and that for the next ensuing fiscal year these representatives believed or the budget represented the reasonable cost of operation would be twice what in fact they knew it would be, and if on such a false and fraudulent showing the local board, being misled and acting in good faith, allocated to such local unit a proportionately larger share of the millage, can it be thought that a fraud would not have been perpetrated ''in the proceedings?'' And likewise a mistake of fact or of law might readily be made by one of the local units which would result in an unjust

allocation by the local board. It is under such circumstances, as well as in cases of fraud or mistake on the part of the local board, that the legislature intended there should be an appeal to and a review by the State tax commission. The act so provides and it should be so construed.

The test of whether the State tax commission had jurisdiction in the instant case to review the allocation of the local board is whether this record discloses that the State tax commission found a material mistake of fact or law "in the proceedings" before the local board. There is no claim of fraud.

As bearing upon whether the State tax commission found a mistake of fact or of law, or a mistake of fact and law, the record on this appeal discloses the following facts and circumstances. By Act No. 280, Pub. Acts 1939, the welfare activities of this State were reorganized. A State department and county departments of social welfare were created and their activities supplanted those of former State and county welfare agencies which were abolished by the 1939 act. By section 45 of the act, county departments of social welfare were created and provision made for county social welfare boards, the members of which, this section provides, "shall be appointed at the annual October session of supervisors, and they shall qualify * * * and assume their duties * * * not later than November 1, 1939." This section further provides that pending the appointment of such county boards "the present welfare agencies in each county shall carry on relief work as prescribed by the present existing laws until the county board created by this act is established and functioning," but not later than November 1, 1939. The fiscal year of the city of Grand Rapids is from April 1st to and including March 31st. For the fiscal year ending March 31, 1939, the city of Grand Rapids had appropriated and spent $124,979 for

social welfare work, but when it presented its budget at the 1939 meeting of the county board of allocation the city put in its budget an item of only $1,605 for carrying on its social welfare work during the ensuing fiscal year; and this amount seems to have been fixed upon as being merely the expense of services incidental to social welfare work and with no thought of its being an amount sufficient to meet the actual expenditures of the city for social welfare work if that burden was to continue to be upon the city. When it was discovered that the social welfare act recently passed by the legislature provided in substance that "the present welfare agencies in each county shall carry on relief work" until November 1, 1939, it was obvious that this item of the city's budget submitted to the county allocation board was far short of the city's needs.

While the proceeding on appeal to the State tax commission was informal, perhaps too informal, still it does appear that the commission concluded the city had made a "mistake" in presenting this item of its budget to the local board. And the record fully justifies the conclusion that it was in consequence of this that the State tax commission in paragraph 6 in its notice to the local units of its order of reallocation stated:

*"That the city of Grand Rapids, in its tentative budget, made no provisions for certain contributions to the welfare cost,* and must have some funds available for works progress administration projects in order to keep men employed; therefore its millage was increased 5/10 of a mill which, in the opinion of the commission, is a fair recognition of the actual necessary costs of the government of the units involved."

From the foregoing, clearly the State tax commission found that the city had made a mistake "in its tentative budget (in that it) made no provisions for

certain contributions to the welfare cost." It is a reasonable and fair inference that the State tax commission concluded that a portion of the increased allocation to the city might well be spent for works progress administration work, thereby lessening the welfare cost. But this is of no consequence, because the State tax board has no power to dictate to a local unit how it should spend its allocated millage. See section 11, subd. (i), of the 1934 act (Act No. 62, § 11, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.] [Comp. Laws Supp. 1935, § 3551-31, Stat. Ann. § 7.71]). The gratuitous suggestion of the State tax commission should not invalidate its reallocation made in consequence of a mistake which it found had been made "in the proceedings" before the local board.

Under the new statutory provision the city of Grand Rapids still had the burden of carrying on its welfare work beyond the period of its previous fiscal year (March 31, 1939), and until November 1, 1939. Through a mistake this item of expenditure was omitted from the city's budget as submitted to the local allocation board; and it was to correct this mistake that the State tax commission ordered a modified allocation between the local units.

For the reason pointed out by Mr. Justice WIEST, the provision in section 17 which purports to bar all judicial review of the proceedings before the State tax commission is void.

Plaintiff failed when obtaining leave to appeal to make the city of Grand Rapids a party defendant in this court. The city was later made a party and permitted to submit amendments to the record of the proceedings had before the State tax commission. Because of the amendments appellant made a motion, now pending before this court, for an order that testimony be taken which it is claimed

would amplify and possibly impeach the amended record now before us as to the proceedings had before the State tax commission. This motion should be denied. Even if appellant is right in its contention, we think the proceedings could be remanded to the State tax commission for correction; but this we deem unnecessary. On certiorari our review is of questions of law only. It is of special importance that there should be strict adherence to this established practice in appeals affecting the levying and collection of taxes because delay in and prolongation of such appeals would seriously impair functioning of governmental agencies.

The State tax commission's order of reallocation is affirmed. This controversy being one of public concern, no costs are awarded.

BUTZEL, C. J., and BUSHNELL and McALLISTER, JJ., concurred with NORTH, J.