WORKERS' COMPENSATION AGENCY DIRECTOR v
MACDONALD'S INDUSTRIAL PRODUCTS, INC
(ON RECONSIDERATION)

Docket No. 311184. Submitted October 9, 2013, at Lansing. Decided
    March 27, 2014. Approved for publication May 29, 2014, at 9:00
    a.m. Leave to appeal denied, 497 Mich ___.

    The Director of the Workers' Compensation Agency brought an
    action in the Ingham Circuit Court in August 2007 against
    MacDonald's Industrial Products, Inc., and the Creditor Trust and
    Security Agreement of MacDonald's Industrial Products, Inc.,
    seeking to enjoin MacDonald's from liquidating its assets and
    requesting the appointment of a receiver for MacDonald's. Mac-
    Donald's owned various industrial facilities, and the State Tax
    Commission had issued an industrial facilities exemption certifi-
    cate in 1999 for a facility on 44th Street in the city of Kentwood.
    The certificate exempted MacDonald's from certain real and
    personal property taxes from December 30, 1999, to December 30,
    2007, permitting it to pay a lower tax. The commission issued
    MacDonald's a second exemption certificate in 2004 that ran from
    December 31 2004, to December 30, 2005. MacDonald's ceased
    operations in 2006. The city then requested that the commission
    revoke the certificates, which it did at a November 29, 2006
    meeting. The commission notified MacDonald's that if it did not
    request a hearing, the commission would enter an order revoking
    the certificates, effective December 30, 2006. MacDonald's did not
    request a hearing, and the commission entered the order on
    February 5, 2007, informing MacDonald's that its certificates had
    been revoked effective December 30, 2006. After the workers'
    compensation director filed this action, the court, Paula J. M.
    Mandefield, J., appointed Thomas E. Woods as receiver. Numerous
    parties intervened, including the city of Kentwood and Kent
    County. In March 2008, Woods sought permission to sell some of
    MacDonald's property in Grand Rapids. The court granted per-
    mission to sell the property free and clear of mortgages, liens, and
    other encumbrances, but required him to pay all outstanding
    property tax liabilities. Woods sold the property and paid the
    unpaid property taxes, interest, and penalties out of the proceeds
    of the sale. In March 2011, Woods sought permission to sell the

44th Street property. The court again permitted him to sell the property free and clear of mortgages, liens, and other encumbrances, but required him to pay the property's real property taxes and escrow statutory interest, fees, and penalties. In October 2011, Woods moved to recover assets of the receivership and distribute proceeds. In part, he asserted (1) that the city of Kentwood and Kent County had impermissibly included interest and penalties in their tax liens and (2) that the commission had improperly revoked the exemption certificates. The court denied Woods's motion in part, concluding (1) that Woods was not entitled to reimbursement because the tax liens in 2006 and summer 2007 had included the interest and penalties and were perfected before he took possession of the property and (2) that the commission could retroactively revoke the exemption certificates. Woods appealed. The Court of Appeals, SERVITTO, P.J., and WHITBECK and OWENS, JJ., affirmed in an unpublished opinion per curiam, issued January 28, 2014 (Docket No. 311184). Woods moved for reconsideration. The Court of Appeals granted the motion and vacated its prior opinion in an unpublished order, entered March 27, 2014.

On reconsideration, the Court of Appeals *held*:

1. The taxes were assessed against the 44th Street property before the circuit court appointed Woods as receiver, and the circuit court properly determined that Woods took the property subject to the 2006 and summer 2007 tax liens. MCL 211.44(3) authorizes municipalities to add late penalty charges, administration fees, and interest to uncollected taxes. MCL 211.40 and MCL 211.44a provide that unpaid taxes become liens. Accordingly, the amount assessed, including interest and charges, is part of the lien against a property on which taxes remain unpaid.

2. The commission erred when it revoked MacDonald's exemption certificates retroactively because doing so was outside the commission's statutory authority. MCL 207.565(4) provides that a commission order revoking an exemption certificate is effective on the December 31 that follows the date of the order. Under MCL 209.105, all orders must be signed by the chair of the commission and sealed with the commission's seal. Nothing in the relevant statutes empowers the commission to make its revocation orders effective retroactively. Because the commission's chair signed the revocation order on February 5, 2007, the effective date of the order was December 31, 2007, and it revoked any exemption for 2008 onward.

3. MacDonald's failed to appeal the commission's revocation order in the circuit court within 60 days, as required by MCL 207.570 and MCL 24.304(1), and Woods's later challenge consti-

tuted a collateral attack on the order. Because the commission acted outside its statutory authority, both the commission's and the circuit court's decisions concerning retroactivity were wrong. A wrong decision is not void, however, but is merely voidable. Collateral attack is permissible only if the decision was void because of a lack of personal or subject-matter jurisdiction. Once a tribunal has subject-matter jurisdiction, it has jurisdiction to make an incorrect decision. That is, there is a difference between a court's having no jurisdiction to take an action and having no legal right to take the action. Because the commission had subject-matter jurisdiction over the type of case before it, the commission's decision was not subject to collateral attack, but was only subject to direct attack on appeal.

4. Woods also contended that the circuit court should have granted a form of equitable relief and declined to hold him liable for the interest and penalties on the taxes because his failure to pay the taxes was in good faith, given that he had no assets with which to pay them. MCL 600.5251, however, provides that the circuit court must first distribute the proceeds of a receivership to pay all taxes legally due and owing to municipalities. Therefore, the circuit court did not have the discretion to vary this statutory mandate by resorting to equity, and the court properly declined to forgive the interest and penalties.

Affirmed.

*Allan Falk, PC* (by *Allan Falk*), for Thomas E. Woods.

*Bloom Sluggett Morgan, PC* (by *Crystal L. Morgan*), for the city of Kentwood.

*Varnum LLP* (by *Marla Schwaller Carew*) for Kent County.

Before: SERVITTO, P.J., and WHITBECK and OWENS, JJ.

PER CURIAM. Thomas E. Woods, receiver of defendant MacDonald's Industrial Products, Inc., appeals as of right the circuit court's order denying in part Woods's motion to recover property taxes that Woods paid to intervening appellees, the city of Kentwood (Kentwood) and Kent County. We affirm.

I. FACTS

A. EXEMPTION CERTIFICATES

MacDonald's was an automotive parts supplier. In 1999, the State Tax Commission (the Commission) issued MacDonald's an industrial facilities exemption certificate for its facility located on 44th Street in Kentwood. In pertinent part, the certificate exempted MacDonald's from certain real and personal property taxes from December 30, 1999, to December 30, 2007, and permitted it to instead pay a lower tax known as the industrial facilities tax.[1] The Commission conditioned the exemption certificate on MacDonald's creating and retaining jobs at its 44th Street property, and the certificate was subject to revocation if the jobs were not created or maintained. In 2004, the Commission issued MacDonald's a second certificate, under substantially similar conditions, that was to run from December 31, 2004, to December 30, 2005.

MacDonald's ceased operations in 2006. In October 2006, Kentwood requested that the Commission revoke the exemption certificates. In a letter dated December 1, 2006, the Department of Treasury notified MacDonald's that the Commission had revoked its certificates at a meeting held on November 29, 2006, and that if MacDonald's did not request a hearing on the matter, the Commission would issue an order revoking its certificates, effective December 30, 2006. MacDonald's did not request a hearing, and the Commission issued an order on February 5, 2007, informing MacDonald's that its certificates had been revoked, effective December 30, 2006.

B. SALE OF THE PROPERTIES

On August 22, 2007, at the request of the Workers'

---

[1] MCL 207.551 et seq.

Compensation Agency, the circuit court appointed Woods as receiver of MacDonald's business and property. In March 2008, Woods sought permission to sell MacDonald's property on Oak Industrial Drive in Grand Rapids. The circuit court granted him permission to sell the property free and clear of mortgages, liens, and other encumbrances, but required him to pay "all outstanding property tax liabilities." Woods sold the property and paid the property's unpaid property taxes, interest, and penalties out of the proceeds of the sale.

In March 2011, Woods sought permission to sell MacDonald's 44th Street property. The circuit court's order permitted him to sell the property free and clear of mortgages, liens, and other encumbrances, but required him to pay the property's "real property taxes" and escrow "[s]tatutory interest, fees and penalties." Woods sold the property in compliance with the order.

### C. MOTION TO RECOVER ASSETS

On October 10, 2011, Woods moved to recover assets of the receivership and distribute proceeds. In parts pertinent to this appeal, Woods asserted that (1) Kentwood and Kent County had impermissibly included interest and penalties in the tax liens and (2) the Commission had improperly revoked MacDonald's exemption certificates. The circuit court denied Woods's motion in part, concluding that (1) Woods was not entitled to reimbursement because the tax liens in 2006 and summer 2007 included the interest and penalties and were perfected before he possessed the property and (2) the Commission could retroactively revoke the exemption certificates.

## II. THE TAX LIENS

### A. STANDARD OF REVIEW

This Court reviews de novo questions of law, including questions involving the statutory priority of payments involved in a receivership.[2] We review de novo questions of statutory interpretation.[3] We review for clear error a circuit court's factual findings and review de novo its legal conclusions.[4]

### B. LEGAL STANDARDS

MCL 211.44(3) authorizes localities to add late penalty charges, administration fees, and interest to uncollected taxes. MCL 211.40 provides that unpaid taxes become liens:

> The amounts assessed for state, county, village, or township taxes on any interest in real property shall become a lien on the real property on December 1, on a day provided for by the charter of a city or village, or on the day provided for in [MCL 211.40a]. The lien for those amounts, and for all interest and charges on those amounts, shall continue until paid.

Concerning summer taxes, MCL 211.44a similarly provides that "[t]axes authorized to be collected shall become a lien against the property on which assessed" on July 1.[5]

### C. PENALTIES AND INTEREST

Woods contends that the first sentence in the portion of MCL 211.40 quoted above creates a lien for property

---

[2] *In re Receivership of 11910 South Francis Rd,* 492 Mich 208, 218; 821 NW2d 503 (2012).

[3] *Id.*

[4] *Id.*

[5] MCL 211.44a(3) and (4).

taxes but does not create a lien for penalties and interest and that the second sentence quoted does not actually create any liens but merely provides that liens on interest and charges will continue until paid. We cannot adopt Woods's reading of this statute.

When interpreting a statute, our goal is to give effect to the intent of the Legislature.[6] The language of the statute is the primary indication of the Legislature's intent.[7] If the language of the statute is unambiguous, we must enforce it as written.[8] This Court reads the provisions of statutes "reasonably and in context."[9] We will not expand the scope of a tax law through forced construction, and we construe doubtful tax laws in favor of the taxpayer.[10]

As already stated, the plain language of MCL 211.40 provides that

[t]he amounts assessed for state, county, village, or township taxes on any interest in real property shall become a lien on the real property on December 1, on a day provided for by the charter of a city or village, or on the day provided for in [MCL 211.40a]. *The lien for those amounts, and for all interest and charges on those amounts*, shall continue until paid.[11]

Considering the provisions of this statute reasonably and in context, we conclude that the lien that the statute creates in the first sentence quoted includes the amounts, interest, and charges in the lien that it mentions "shall

---

[6] *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009).

[7] *Id.*

[8] *Id.*

[9] *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

[10] *Ameritech Publishing, Inc v Dep't of Treasury*, 281 Mich App 132, 136; 761 NW2d 470 (2008).

[11] Emphasis added.

continue" in the second sentence. Woods's proposed interpretation of the statute—that the Legislature meant to *continue* a lien for interest and charges that it had not actually *created*—is not reasonable. Reading the sentences together, the only reasonable interpretation is that the Legislature meant to indicate that interest and charges are included, along with amounts assessed, in the lien that it created. We conclude that the plain meaning of MCL 211.40 is that the amount assessed, including interest and charges, is part of the lien against a property on which taxes remain unpaid.

### D. 2006 AND 2007 TAX LIENS BEFORE WOODS'S APPOINTMENT

Woods contends that the circuit court erred when it required him to pay taxes that were assessed in 2006 and 2007, before the circuit court appointed him as the receiver for MacDonald's. We disagree.

We conclude that Woods took the property subject to the liens. In *In re Dissolution of Ever Krisp Food Products Co*, the Michigan Supreme Court held that in a receivership, "a receiver takes property subject to *prior* and *existing* liens . . . ."[12] Unpaid property taxes automatically become liens on the real property on the first of December, for winter taxes, and the first of July, for summer taxes.[13]

The 2006 and summer 2007 tax liens attached to the property before Woods's appointment as receiver. Because these liens were created before Woods's appointment and they continued to exist when he took the property, Woods took the property subject to the liens. We conclude that the circuit court properly determined

---

[12] *In re Dissolution of Ever Krisp Food Prods Co*, 307 Mich 182, 196; 11 NW2d 852 (1943).

[13] MCL 211.40; MCL 211.44a(3) and (4).

that Woods took the 44th Street property subject to the 2006 and summer 2007 tax liens.

Woods also contends that the Michigan Supreme Court modified its prior decision in *Ever Krisp* with its holding in *In re Rite-Way Tool & Manufacturing Co.*[14] We disagree.

In *Rite-Way Tool*, the receiver operated the business for three years before the trial court authorized him to liquidate the business's assets.[15] During that time, the trial court's order required the receiver to pay the business's taxes.[16] The city of Detroit attempted to argue that the taxes were an " 'expense of administration' " of the receivership, which had first priority of distribution under the trial court's order.[17]

The Michigan Supreme Court held that the taxes were administration expenses of the receivership because the taxes were assessed while the receiver was conducting the business.[18] The Court distinguished its prior decision in *Ever Krisp* on the basis that, in *Ever Krisp*, the taxes were assessed against the owner of the property before the receiver was appointed.[19]

*Rite-Way Tool* involved a case in which the state assessed the tax against the receivership.[20] But *Ever Krisp* involved a case in which the state assessed the taxes against the owner of the property, before the trial court appointed the receiver.[21] The Court in *Rite-Way Tool*

---

[14] *In re Rite-Way Tool & Mfg Co*, 333 Mich 551; 53 NW2d 373 (1952).

[15] *Id.* at 553.

[16] *Id.* at 554.

[17] *Id.*

[18] *Id.* at 556.

[19] *Id.* at 557.

[20] *Id.* at 554.

[21] *Ever Krisp*, 307 Mich at 188-189, 196.

specifically referred to its prior decision in *Ever Krisp* and determined that *Ever Krisp* was "not controlling of decision in the case at bar because there is a controlling factual difference . . . ."[22] Thus, the Court did not *modify* its holding in *Ever Krisp*. Rather, the Court *distinguished* that decision. We conclude that the Michigan Supreme Court's decision in *Rite-Way Tool* did not modify its holding in *Ever Krisp*.

Woods also contends that *Rite-Way Tool*—not *Ever Krisp*—applies to the facts in this case, and thus the trial court erred by applying the holding in *Ever Krisp*. We disagree.

The taxes were assessed against the 44th Street property before the circuit court appointed Woods as receiver. Unlike in *Rite-Way Tool*, Kentwood did not assess the taxes while Woods was operating the business. Thus, we conclude that the circuit court did not err by applying *Ever Krisp* because *Rite-Way Tool* does not apply to the facts in this case.

### III. REVOCATION OF EXEMPTION CERTIFICATES

#### A. STANDARD OF REVIEW

This Court reviews de novo issues of the interpretation and application of statutes.[23] If the plain and ordinary meaning of a statute's language is clear, we enforce the statute's language as written.[24] When interpreting a statute, our goal is to give effect to the intent of the Legislature.[25] The language of the statute itself is the primary indication of the Legislature's intent.[26]

---

[22] *Rite-Way Tool*, 333 Mich at 557.

[23] *Adair v Michigan*, 486 Mich 468, 477; 785 NW2d 119 (2010).

[24] *United States Fidelity*, 484 Mich at 12-13.

[25] *Id.* at 13.

[26] *Id.*

### B. THE POSITIONS OF THE PARTIES

Woods contends that the Commission improperly revoked the exemption certificates retroactively to December 2006 and that the circuit court erred by concluding that the Commission could revoke those certificates retroactively. Woods contends that since the Commission did not actually enter a signed revocation order until February 5, 2007, according to the statute that order became effective for taxes arising only on and after December 31, 2007. Thus, Woods argues, the Commission's revocation of the certificates had no valid effect on the exemptions for 2006 (since the revocation was not signed and did not become effective before December 31, 2006) or for 2007 (since the revocation only became effective for taxes arising on or after December 31, 2007). Simply put, it is Woods's position that the Commission's revocation of the certificates is void with respect to 2006 and 2007 taxes.

Kentwood contends on appeal, as it argued below, that even if the Commission erred by retroactively revoking the exemption certificates, Woods's challenge is improper. According to the city, because MacDonald's failed to appeal the Commission's decision to the circuit court within 60 days as provided by law,[27] his later challenge is an impermissible collateral attack on that decision. We conclude that Woods's challenge is an impermissible collateral attack.

### C. STATUTORY PROVISIONS

MCL 207.565(4) provides that

[t]he order of the commission revoking the certificate shall be effective on the December 31 next following the date of

---

[27] MCL 207.570; MCL 24.304(1).

the order and the commission shall send by certified mail copies of its order of revocation to the holder of the certificate, to the local legislative body, to the assessor of the assessing unit in which the facility is located, and to the legislative body of each taxing unit which levies taxes upon property in the local governmental unit in which the facility is located.

MCL 207.565(4) thus provides that an order revoking an exemption certificate "shall be effective on the December 31 next following the date of the order . . . ." We also note that all orders made or issued by the Commission must be signed by the chairman and sealed with the seal of the Commission.[28] A taxpayer aggrieved by the Commission's decision to revoke an exemption certificate may appeal the order in the circuit court within 60 days.[29]

### D. THE EFFECTIVE DATE OF THE REVOCATION ORDER

Our first task in unraveling this issue is to determine the effective date of the Commission's revocation order. If the action that the Commission took at its meeting on November 29, 2006, to revoke the certificates and the Department of Treasury's notification to MacDonald's of this action on December 1, 2006, are valid, then December 31, 2006, is the date "next following" the revocation and the notification. Therefore, under this view, December 31, 2006, is the effective date of the Commission's revocation order. And, it follows, this revocation order would revoke the exemption certificates for 2007 onward.

However, if no valid action of the Commission took place until February 5, 2007, the date that the chairperson of the Commission actually signed the revoca-

---

[28] MCL 209.105.
[29] MCL 207.570; MCL 24.304(1).

tion order, December 31, 2007, is the date "next follow-ing" that signature. Therefore, under this view, December 31, 2007, is the effective date of the Commission's revocation order. And, it follows, this revocation order would revoke the exemption certificates for 2008 onward.

We conclude that the latter formulation is the correct one. Construing MCL 207.565(4) and MCL 209.105 together, we conclude that the effective date of the Commission's revocation order is December 31, 2007.

We first note that this conclusion comports with the plain language of the two statutes. The plain language of MCL 207.565(4) precludes retroactive revocation by providing a specific time, *after the date of the order*, when that revocation becomes effective. By definition, therefore, the effective date of revocation order must be *after* the entry date of the order; that is, on the December 31 "next following" the date of the revocation order. And the word "shall" in MCL 209.105 *requires* that the chairman of the Commission sign all orders that the Commission issues.[30] Again, by definition, the orders are not valid until the chairman signs them.

Secondly, this conclusion is in accordance with more general jurisprudential principles. It is blackletter law, as Woods points out, that when a court makes a ruling and later enters an order effectuating that ruling, the order is only effective when the judge signs it and it is entered.[31] And, as Woods again points out, courts cannot automatically enter an order *nunc pro tunc* as of the

---

[30] See *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982) (stating that use of the world "shall" indicates something that is mandatory).

[31] See *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977) ("'The rule is well established that courts speak through their judgments and decrees, not their oral statements or written opinions. Generally, a judgment

date of a particular ruling.[32] It follows that administrative agencies enjoy no broader power than do courts to give retroactive effect to their actions.

Thirdly, this conclusion is also in accord with principles of administrative law. As Woods points out, administrative agencies are creatures of statute. They have only the powers the statutes expressly grant, and we must strictly construe any statute claimed to supply such powers.[33] Similarly, the Commission possesses only those powers the statutes confer and has no implied powers whatsoever. As held in *Topps of Warren, Inc v City of Warren, Inc,*

> Plaintiff contends that the jurisdiction of the State Tax Commission is purely statutory, that the statutes must be strictly construed, and that if the commission had jurisdiction it lost it through the passage of time. We agree. The State Tax Commission possesses only those powers conferred on it by statute. *Detroit Edison Co. v. City of Detroit* (1941), 297 Mich 583 [298 NW 290]. These statutes must be strictly construed. In *In re Dodge Brothers* (1928), 241 Mich 665, 669 [217 NW 777], the Court said, "The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer."[34]

---

or order is reduced to written form . . . ; until reduced to writing and signed, the judgment did not become effective . . . .") (citations omitted).

[32] See *Shifferd v Gholston*, 184 Mich App 240, 243; 457 NW2d 58 (1990) ("An entry nunc pro tunc is proper to supply an omission in the record of action really had, but omitted through inadvertence or mistake."); *Freeman v Wayne Probate Judge*, 230 Mich 455, 460; 203 NW 158 (1925) (stating that the purpose of entering an order *nunc pro tunc* is not to supply an action omitted by a trial court).

[33] *Consumers Power Co v Pub Serv Comm*, 460 Mich 148, 155-156; 596 NW2d 126 (1999).

[34] *Topps of Warren, Inc v City of Warren*, 27 Mich App 59, 61-62; 183 NW2d 310 (1970). See also *Grand Rapids Bd of Ed v State Tax Comm*, 291 Mich 50, 54-58; 288 NW 331 (1939).

Rather obviously, there is nothing in the relevant statutes that empowers the Commission to make its revocation orders effective retroactively. Indeed, the plain language of MCL 207.565(4) precludes such retroactive revocation. And it is only a semantic half-step to conclude that therefore, the Commission's attempted retroactive revocation of the exemption certificates is a nullity,[35] despite the trial court's conclusion to the contrary. Reaching this conclusion, however, only begins, not ends, our inquiry.

### E. COLLATERAL ATTACK

#### 1. WHETHER WOODS'S ATTACK IS COLLATERAL

Having determined that the trial erred by concluding that the Commission could retroactively revoke the exemption certificates, our second task is to determine whether Woods's position in this proceeding is a collateral attack.

It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding:

> "The final decree of a court of competent jurisdiction made and entered in a proceeding of which all parties in interest have due and legal notice and from which no appeal is taken cannot be set aside and held for naught by the decree of another court in a collateral proceeding commenced years subsequent to the date of such final decree."[36]

---

[35] See *Deadwyler v Consolidated Paper Co*, 260 Mich 130, 132; 244 NW 484 (1932).

[36] *Dow v Scully*, 376 Mich 84, 88-89; 135 NW2d 360 (1965), quoting *Loesch v First Nat'l Bank of Ann Arbor*, 249 Mich 326, 330; 228 NW 717 (1930).

There is no question that the Commission had the authority to revoke the exemption certificates.[37] MacDonald's could have appealed that decision in the circuit court.[38] MacDonald's also could have contested the tax assessment itself before the local board of review, claiming an exemption, or before the Tax Tribunal or the circuit court.[39] MacDonald's had notice of the proceeding, but elected not to request a hearing or take an appeal. In other words, the Commission had the requisite general authority to revoke the exemption certificates and MacDonald's had legal notice and elected not to take an appeal. But Woods is now challenging the Commission's decision—years later—in this new proceeding. We conclude that Woods's attack on the Commission's decision is a collateral attack.

### 2. PROPRIETY OF COLLATERAL ATTACK

Having determined that Woods's attack on the Commission's decision in this case is a collateral attack, our third task is to determine whether Woods's collateral attack can succeed. This requires us to answer two questions. First, did the Commission have the *authority* to revoke the tax exemption certificates retroactively? As outlined above, we conclude that it did not. Second, did the Commission have subject-matter *jurisdiction* to revoke the tax exemption certificates? Clearly it did.

Woods contends not that the Commission lacked the general authority to revoke the exemption certificates, but that the Commission acted outside its statutory authority in making its order retroactive. As we have outlined, we agree with that contention. But we still

---

[37] MCL 207.565.

[38] See MCL 207.570; MCL 24.304(1).

[39] MCL 205.735(1); *Parkview Mem Ass'n v City of Livonia*, 183 Mich App 116, 118-120; 454 NW2d 169 (1990).

must consider whether an action outside an agency's authority is subject to collateral attack at any time, even after the expiration of the relevant direct appeal period, or whether it may only be attacked by way of a direct appeal.

We start with the proposition that a wrong decision is not void; it is merely voidable.[40] And only void decisions are subject to collateral attack.[41] Again, as we have outlined, we conclude that the Commission's and the trial court's retroactivity decisions were wrong. But this conclusion does not directly address the contention that the Commission's decision was void (and subject to collateral attack at any time), rather than merely voidable (and therefore subject to attack only by direct appeal).

In *Lake Township v Millar*, the plaintiffs sought to declare drain proceedings "fraudulent and void."[42] The drain in that case did not fall within the statutory definition of a drain, but was instead a sewer.[43] The defendants contended that "plaintiffs not having attacked the regularity of the proceedings here involved by certiorari, are estopped from questioning their regularity in this proceeding."[44] The Michigan Supreme Court disagreed on the grounds that the drain commissioner lacked legal authority to construct a sewer and therefore his actions exceeded his authority under the statute.[45] It therefore determined that the drain commissioner's collateral-estoppel arguments had no merit because

---

[40] *Morris v Barker*, 253 Mich 334, 337; 253 NW 174 (1931).

[41] *Id.*; *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 544; 260 NW 908 (1935).

[42] *Lake Twp v Millar*, 257 Mich 135, 137; 241 NW 237 (1932).

[43] *Id.* at 139.

[44] *Id.* at 141.

[45] *Id.* at 141-142.

[t]he rule is that errors and irregularities in drain proceedings must be taken advantage of by certiorari, but an entire want of jurisdiction may be taken advantage of at any time. The drain commission had no jurisdiction to construct a sewer any more than to construct a Covert road. . . . The proceedings are void for want of jurisdiction.[46]

This case is somewhat similar to the proceedings in *Millar*. As stated above, the Commission did not have statutory authority to issue a retroactive decision and its actions did not fall within its statutory authority. This conclusion, however, still does not end our inquiry. A collateral attack "is permissible only if the court never acquired jurisdiction over the persons or the subject matter."[47] In a somewhat analogous situation, the Supreme Court in *Bowie v Arder* held that "while an error in the *exercise* of a court's jurisdiction is not subject to collateral attack, *want of jurisdiction* renders a judgment void."[48] Thus, collateral attack is proper only against those decisions that are void *because of* a lack of personal or subject-matter jurisdiction.

A tribunal's subject-matter jurisdiction depends on the kind of the case before it, not on the particular facts of the case:

Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the

---

[46] *Id.* at 142.

[47] *Edwards v Meinberg*, 334 Mich 355, 358; 54 NW2d 684 (1952); see also *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992).

[48] *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992) (emphasis added); see also *Jackson City Bank*, 271 Mich at 545 ("Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked.") (quotation marks and citation omitted).

> particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending. The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry. Jurisdiction always depends on the allegations and never upon the facts.[49]

Once a tribunal has subject-matter jurisdiction, it has jurisdiction to make an incorrect decision.[50] There is a difference between a court's having no *jurisdiction* to take an action and having no *legal right* to take the action.[51]

At the commencement of the action, the Commission had the abstract power to determine whether to revoke MacDonald's exemption certificates. There is no question that the Commission has the power generally to determine whether to revoke exemption certificates. However, the Commission then erred in its *exercise* of that jurisdiction: it determined that it had the legal right to revoke the exemption certificates retroactively when it actually had no right to do so. This, however, did not render the Commission's decision void for lack of subject-matter jurisdiction. Because the Commission had subject-matter jurisdiction over this type of case, its decision is not subject to collateral attack.

We conclude that the Commission's decision— incorrect, improper, and outside its statutory authority to issue—was subject to direct attack on appeal, but was not properly the subject of a collateral attack because the Commission had subject-matter jurisdiction. Since Woods's appeal is a collateral attack, it cannot succeed.

---

[49] *Altman*, 197 Mich App at 472 (citations omitted).

[50] *Id.* at 473.

[51] See *Bowie*, 441 Mich at 40; *Buczkowski v Buczkowski*, 351 Mich 216, 222; 88 NW2d 416 (1958).

### 3. ULTRA VIRES

On reconsideration, Woods contends that when the Tax Tribunal exceeded its jurisdiction, its act was ultra vires and therefore void rather than voidable. We note that Woods did not raise this argument in his original brief on appeal but, because it is an extension of his argument regarding the Tax Tribunal's authority, we will address it here briefly in the interests of completeness.

Put simply, "ultra vires" means "beyond the scope of power allowed or granted . . . by law."[52] As stated above, we agree that the Tax Tribunal's action was not within the scope of its authority. However, simply because the action was beyond the scope of its authority does not mean that Woods can collaterally attack that action in a separate proceeding.

The federal cases Woods cites are not persuasive on the issue of collateral attack. They all concern cases in which an appellate court was directly reviewing a decision in the same case, even if the review was not timely. In *City of Arlington v Federal Communications Commission*, the city petitioned for review of a declaratory ruling by the commission.[53] The United States Supreme Court held that, unlike a court, an agency's power to act is not independent of whether its decision is proper.[54] However, in *Arlington*, the United States Supreme Court was reviewing the decision of the United States Court of Appeals for the Fifth Circuit regarding the district court's decision upholding the declaratory ruling.[55] Thus, the case was on direct, not collateral, review.

---

[52] *Black's Law Dictionary* (9th ed).

[53] *City of Arlington v Fed Communications Comm*, 569 US ___; 133 S Ct 1863, 1867; 185 L Ed 2d 941 (2013).

[54] *Id*. at ___; 133 S Ct at 1869.

[55] *Id*. at ___; 133 S Ct at 1868-1869.

Similarly, in *Anderson v Holder*, as well as filing a habeas corpus petition, Anderson moved to reopen his Board of Immigration Appeals case.[56] The United States Court of Appeals for the Ninth Circuit was directly reviewing Anderson's motion to reopen his case before the board.[57] Because the Board of Immigration Appeals had exceeded its authority, its order of removal was invalid.[58] Therefore, again, the case was on direct, if untimely, review.

Further, *Anderson* is similar to the Michigan Supreme Court's decision in *Bowie*, in which the Court reviewed the aggrieved parties' motion to reopen the original proceedings.[59] These cases all held that a tribunal acted outside its authority and overturned the original order, but they all concerned direct reviews of the original cases between the original parties. None of these cases overturned an order issued in a separate proceeding. Thus, these cases do not persuade us that while the Commission's retroactive revocation was an incorrect exercise of its authority—and therefore ultra vires—such a revocation can be the subject of a collateral attack.

### IV. CONSIDERATION OF THE EQUITIES

#### A. STANDARD OF REVIEW

This Court reviews de novo a court's decision concerning whether equitable relief is appropriate under specific facts and reviews for clear error the court's factual findings.[60]

---

[56] *Anderson v Holder*, 673 F3d 1089, 1093 (CA 9, 2012).

[57] *Id.* ("Anderson's timely petition for review of this decision . . . is the second of those consolidated here.").

[58] *Id.* at 1094.

[59] *Bowie*, 441 Mich at 56.

[60] *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008); *Eller v Metro Indus Contracting, Inc*, 261 Mich App 569, 571; 683 NW2d 242 (2004).

### B. LEGAL STANDARDS

Funds from a receivership are first distributed to pay "[a]ll taxes legally due and owing by the assignor to the United States, state, county or municipality"[61] and are only then distributed to pay "[t]he cost of administration[.]"[62] "When the Legislature has prescribed the order of priority, our courts may not vary it by resort to equity."[63]

### C. APPLYING THE STANDARDS

Relying on *In re Wagner Estate (After Remand)*,[64] Woods contends that the circuit court should have declined to hold him liable for the interest and penalties on the taxes as a form of equitable relief because his failure to pay the taxes was in good faith since he had no assets as receiver with which to pay the taxes. We disagree.

In *Wagner Estate*, this Court affirmed a trial court's decision to waive penalties and interest related to an estate tax.[65] The Michigan Estate Tax Act[66] granted the probate court the right to determine all questions arising under that act's provisions.[67] Thus the probate court had the authority to review the Department of Treasury's decision not to waive the plaintiff's penalties and interest on the late tax payments.[68]

---

[61] MCL 600.5251(1)(a).

[62] MCL 600.5251(1)(b).

[63] *South Francis Rd Receivership*, 492 Mich at 224 n 37; cf. *Stokes v Millen Roofing Co*, 466 Mich 660, 673; 649 NW2d 371 (2002) (stating that equitable relief cannot defeat a statutory ban on compensation).

[64] *In re Wagner Estate (After Remand)*, 224 Mich App 400; 568 NW2d 693 (1997).

[65] *Id*. at 402.

[66] MCL 205.201 *et seq.*

[67] *Id*. at 401; MCL 205.210.

[68] *Wagner Estate*, 224 Mich App at 401.

*Wagner Estate* is distinguishable because this case does not involve a provision of the Michigan Estate Tax Act and the statute at issue here does not provide the circuit court any discretion regarding the order of priority for payments from a receivership distribution. As discussed above, MCL 600.5251(1)(a) provides that the circuit court must first distribute the proceeds of a receivership to pay "[a]ll taxes legally due and owing" to municipalities. Further, MCL 600.5251(1) uses the word "shall." The word "shall" indicates a requirement and "expresses a directive, not an option."[69] Thus, the circuit court did not have the discretion to vary this statutory mandate by resorting to equity. We conclude that the circuit court properly declined to forgive the interest and penalties as a form of equitable relief.

### V. CONTEMPT OF COURT

Generally, a party must raise an issue before the trial court to preserve it for our review.[70] "[P]roceedings for contempt committed outside the presence of the court must be initiated pursuant to the procedure set forth at MCR 3.606."[71] MCR 3.606 provides that contempt proceedings are initiated by a motion. Woods did not move the circuit court to hold Kentwood or Kent County in contempt for violating its orders. Therefore, this issue is unpreserved.

This Court may review an unpreserved issue "if it presents a question of law and all the facts necessary for

---

[69] *Wolverine Power Supply Coop, Inc v Dep't of Environmental Quality*, 285 Mich App 548, 561; 777 NW2d 1 (2009).

[70] *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).

[71] *In re Contempt of McRipley*, 204 Mich App 298, 301; 514 NW2d 219 (1994).

its resolution are before the Court."[72] A court must follow a particular process before sanctioning a party for contempt.[73] This process includes making findings of fact at a contempt hearing in order to determine whether a party committed contempt.[74] Kentwood's and Kent County's alleged contempt took place outside the presence of the court, but the circuit court has not held a contempt hearing and thus there are no findings of fact available on the record. We conclude that we cannot review this unpreserved issue because not all the facts that would be necessary for our review are available to this Court.

### VI. CONCLUSION

We conclude that the circuit court properly denied Woods's motion to exclude the 2006 and summer 2007 taxes, including penalties and interest, from its distribution to Kentwood and Kent County. We also conclude that the Commission erred when it determined that it could revoke MacDonald's exemption certificates retroactively. Its decision to do so was outside its statutory authority. However, because the Commission had subject-matter jurisdiction to determine whether to revoke MacDonald's exemption certificates, this decision was not subject to collateral attack. The remainder of Woods's assertions lack merit.

We affirm.

SERVITTO, P.J., and WHITBECK and OWENS, JJ., concurred.

---

[72] *Macatawa Bank v Wipperfurth*, 294 Mich App 617, 619; 822 NW2d 237 (2011).

[73] *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 713; 624 NW2d 443 (2000).

[74] See *id*. at 712-713.