*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALVERT BAIL BONDS AGENCY, LLC,

       Plaintiff-Appellant,

v

ST. CLAIR COUNTY,

       Defendant-Appellee.

UNPUBLISHED
August 18, 2022

No. 357003
St. Clair Circuit Court
LC No. 13-002205-CZ

---

CALVERT BAIL BONDS AGENCY, LLC,
BANKS BAIL BONDS AGENCY, LLC, and
FINANCIAL CASUALTY & SURETY, INC.,

       Plaintiffs-Appellants,

v

ST. CLAIR COUNTY,

       Defendant-Appellee.

No. 357716
St. Clair Circuit Court
LC No. 20-002199-CZ

---

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In these consolidated appeals[1] related to forfeited bail bonds, in Docket No. 357003, plaintiff, Calvert Bail Bonds Agency, LLC (Calvert), appeals by leave granted[2] the trial court's opinion and order granting defendant's motion to allow a setoff from a different case to be used to

---

[1] *Calvert Bail Bonds Agency, LLC v St Clair Co*, unpublished order of the Court of Appeals, entered July 15, 2021 (Docket Nos. 357003 and 357716).

[2] *Id.*

-1-

satisfy the judgment against defendant. In Docket No. 357716, plaintiffs, Calvert, Banks Bail Bonds Agency, LLC (Banks), and Financial Casualty & Surety, Inc. (FCSI), appeal as of right the opinion and order of the trial court granting summary disposition in favor of defendant. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This appeal involves two separate, initially independent cases that eventually became intertwined. One of the cases, Case No. 13-002205-CZ ("the 2013 case"), has been before us three times, two of which resulted in opinions. In the second opinion from this Court in the 2013 case, the panel provided a brief, yet relevant, factual summary of the litigation:

> [Calvert] is a bail bond company and acts as a surety for criminal defendants who are required to post bond. [Calvert] posted surety bonds on behalf of 11 underlying criminal defendants, but they all failed to appear in court. Judgment was entered against [Calvert], and the bonds paid on behalf of the underlying defendants were forfeited. [Calvert] was entitled to a return of the bond payments if it followed the procedures set forth under MCL 765.28, which required [Calvert] to pay the full amount of the judgments for bond forfeitures, and apprehend and return the underlying defendants to the court. However, both obligations were required to be completed within 56 days of the entry of the order forfeiting the bond. See MCL 765.28(3). In nine cases, [Calvert] located the underlying defendants and brought them back to the 72nd District Court in St. Clair County, but it failed to do so within 56 days. In the tenth case, the underlying defendant was located in a jail in another state. In the eleventh case, the underlying defendant was located in Canada. In those two cases, the St. Clair County Prosecutor declined to extradite the defendants, which prevented their prompt return to the district court. Additionally, [Calvert] paid two of the forfeited bond payments within 56 days, but it paid the remaining nine forfeited bond payments after the 56-day period had passed.
>
> [Calvert] requested a remittance of all 11 forfeited bond payments made on behalf of the underlying defendants from the 72nd District Court. The district court remitted partial bond payments of $450 to [Calvert] in the two cases where [Calvert] had paid the full forfeited bond payment within 56 days. In both cases, defendant retained $50. In the other nine cases, the district court refused to remit payment entirely because [Calvert] failed to pay the forfeited bond payment within 56 days.
>
> [Calvert] filed suit to recover the forfeited bond payments that it had made on behalf of the 11 defendants. In total, [Calvert] requested the remittance of a sum total of $37,450 in forfeited bond payments. After the trial court denied defendant's motion for summary disposition, the parties signed a stipulated order directing them to submit trial briefs and a stipulated set of facts in lieu of appearing for a bench trial. In its trial brief, [Calvert] argued that it was entitled to an equitable remedy under MCL 600.4835 because good cause existed for the trial court to grant an equitable remittance of the bond payments. Defendant, however, argued that MCL 765.28 was amended in 2002 "to provide the same legal remedy to commercial sureties that MCL 765.15 provides in cash bond situations," and therefore, MCL

765.28 provided the only possible remedy for [Calvert]. The trial court agreed with defendant, and it entered an order dismissing [Calvert]'s claims without reaching the question of whether there was good cause to remit the bond payments under MCL 600.4835. This Court, however, disagreed with the trial court, and it reversed the lower court's decision and remanded for further proceedings. See *Calvert Bail Bond Agency, LLC v St Clair Co*, 314 Mich App 548, 556; 887 NW2d 425 (2016) [(*Calvert Bail I*)]. This Court held that MCL 765.28 provided a safe harbor for sureties where, if certain conditions were satisfied, they would be entitled to remittance. *Id*. at 555. That said, a plaintiff could still seek an equitable remittance under MCL 600.4835, but remittance would not be guaranteed, and even if the trial court authorized remittance, it would not have to be the full amount. *Calvert Bail* [*I*], 314 Mich App at 555.

On remand, the trial court held a post-appeal hearing. After the hearing, the trial court entered an opinion and order granting judgment in favor of [Calvert]. The trial court concluded that [Calvert] established the requisite good cause for relief under MCL 600.4835. Defendant now appeals. [*Calvert Bail Bonds Agency, LLC v St Clair Co*, unpublished per curiam opinion of the Court of Appeals, issued May 17, 2018 (Docket No. 336821) (*Calvert Bail II*), pp 1-2.]

To summarize, briefly, then, when the second appeal of the 2013 case took place, Calvert had been awarded a judgment by the trial court against defendant in the amount of $37,500. The award was provided under MCL 600.4835 because, although Calvert had missed the safe-harbor provision under MCL 765.28, it had shown good cause for the equitable remedy under MCL 600.4835. *Calvert Bail II*, unpub op at 2. The distinction between the safe-harbor provision of MCL 765.28 and the good-cause equitable provision of MCL 600.4835 had been established in the first appeal of the 2013 case, *Calvert Bail I*, 314 Mich App at 554-555. In the second appeal, this Court agreed with the trial court's interpretation of the term "good cause" from MCL 600.4835, and its conclusion that Calvert had shown good cause for remittance under the statute. *Calvert Bail II*, unpub op at 3-5. As a result, this Court affirmed the judgment in favor of Calvert in the 2013 case. *Id*. at 5.

While the appellate and lower court litigation in the 2013 case progressed, Calvert continued to become involved in other cases involving bail bonds. As relevant to this appeal, in Case No. 16-P05318-FY ("the 2016 case") before the 72nd District Court in defendant county, Calvert stated on the record it was acting as surety on the bond for Jameel Khatin Johnson in the amount of $100,000. Johnson did not show up for court after being released, the bond was forfeited, and judgment was entered against Calvert for $100,000 on October 13, 2016. Calvert attempted to appeal the judgment after bond forfeiture to the circuit court, but missed the deadline. The circuit court dismissed for lack of jurisdiction. Calvert then moved the district court for relief from the judgment after bond forfeiture, which the district court denied on the basis of Calvert's legal arguments under MCL 765.28. Calvert again attempted to appeal to the circuit court, but was unsuccessful. In the midst of those proceedings, Johnson was apprehended, pleaded guilty to the charged crimes, and was sentenced. Before the district court and the circuit court in the 2016 case, Calvert never made any equitable arguments under MCL 600.4835 nor asserted that it should not have been listed as the judgment debtor.

By this point, then, the 2013 case had already been litigated in its entirety with Calvert achieving an equitable judgment of $37,500, and this Court affirming. *Calvert Bail II*, unpub op at 2, 5. The 2016 case, meanwhile, had twice been appealed to the circuit court by Calvert, but had not been reversed. Thus, the $100,000 judgment in favor of defendant, against Calvert, still remained in the 2016 case.

Subsequently, Calvert filed an original lawsuit in the circuit court, Case No. 19-000201-CZ ("the 2019 case"). Calvert, making only legal arguments, sought to have the judgment after bond forfeiture in the 2016 case set aside. Calvert named as the defendant the "72nd District Court Judge." The trial court granted summary disposition in favor of the named defendant and dismissed the case. Calvert did not appeal the dismissal.

Then, on December 23, 2020, more than 17 months after the circuit court dismissed the 2019 case, and more than four years after the judgment after bond forfeiture had been entered against Calvert in the 2016 case, Calvert, along with Banks and FCSI, filed a "complaint for equitable relief" in Case No. 20-002199-CZ ("the 2020 case"). As specifically related to Calvert, the complaint sought an "equitable exoneration from judgment" under MCL 600.4835.

Before responding to the new complaint in the 2020 case, defendant moved the trial court in the 2013 case to allow a setoff of the equitable judgment of $37,500 with the $100,000 judgment after bond forfeiture in the 2016 case. Just eight days later, in the 2020 case, defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(8). In particular, defendant contended the complaint for equitable relief was barred by the doctrine of res judicata, considering Calvert could have and should have brought its equitable arguments in the 2019 case.

In responding to defendant's motion for setoff in the 2013 case, Calvert asserted, for the first time, that it was not the appropriate judgment debtor in the 2016 case. Instead, Calvert argued it had acted as FCSI's agent in the case. Because FCSI was the actual surety on the bond in the 2016 case, judgment should have been entered against it. As a result, Calvert and defendant did not have mutual debts, which disallowed setoff. Calvert requested attorney fees as a sanction, asserting defendant's motion was frivolous. In the 2020 case, plaintiffs argued summary disposition was not warranted because they were permitted to bring an equitable complaint, when they had only ever made legal arguments in previous lawsuits. Plaintiffs also asserted the 2019 case could not be used for purposes of res judicata because it had been against a different party, the 72nd District Court Judge, not defendant. Further, plaintiffs argued its complaint for declaratory relief only in the 2019 case could not be res judicata for additional equitable arguments under a federally acknowledged exception to the rule.

After hearing oral arguments in both cases, the trial court ruled in favor of defendant. In the 2013 case, the trial court determined Calvert's challenge relied on collaterally attacking the 2016 judgment, which was not permitted. Thus, because the judgment after bond forfeiture was against Calvert, the two parties were mutually indebted. The trial court did not specifically address Calvert's request for attorney fees as a sanction, presumably because Calvert had not prevailed. In the 2020 case, the trial court agreed the case was barred under the doctrine of res judicata. The trial court refused to reward Calvert for suing the wrong party in the 2019 case. The trial court, which decided both the 2019 and 2020 cases, stated it treated defendant as the true party in interest in the 2019 case, so plaintiffs' argument about different parties lacked merit. Consequently, the

-4-

trial court granted summary disposition in favor of defendant and dismissed the case. These appeals followed.

## II. DOCKET NO. 357003

In this appeal, Calvert challenges the trial court's ruling regarding setoff in the 2013 case.

### A. SETOFF

Calvert argues the trial court improperly granted defendant's motion for a setoff because there was no mutual indebtedness between the parties. We disagree.

### 1. STANDARD OF REVIEW AND GENERAL LAW

"The trial court's decision in this regard to grant a setoff, a matter in equity, is reviewed de novo." *Grace v Grace*, 253 Mich App 357, 368; 655 NW2d 595 (2002). "Setoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts against each other." *In re Conservatorship of Murray*, 336 Mich App 234, 261; 970 NW2d 372 (2021) (quotation marks and citation omitted). " 'Unless specifically authorized by statute in a particular instance, setoff is a matter in equity based on equitable principles.' " *Id*., quoting *Mahesh v Mills*, 237 Mich App 359, 361; 602 NW2d 618 (1999).

### 2. APPLICABLE LAW AND ANALYSIS

The trial court properly granted defendant's request to set off the judgment in the 2013 case with the judgment after bond forfeiture from the 2016 case.

As just stated, setoff only is appropriate when two entities have "mutual debts against each other." *In re Conservatorship of Murray*, 336 Mich App at 261 (quotation marks and citation omitted). In the 2013 case, judgment was entered by the trial court in favor of Calvert against defendant for $37,500. In the 2016 case, the district court entered the judgment after bond forfeiture against Calvert for $100,000. The parties do not dispute that the judgment in the 2016 case was in favor of defendant, as required by statute. Therefore, on the face of each judgment, defendant and Calvert had "mutual debts against each other." *Id*. (quotation marks and citation omitted).

In an effort to escape the obvious conclusion that setoff was warranted, Calvert claims the 2016 judgment *should have* been entered against FCSI. Calvert insists FCSI was the surety on the bail bond in the 2016 case, while Calvert merely acted as FCSI's agent. As a result, Calvert claims, there is not mutual indebtedness between it and defendant. Instead, defendant was owed money from FCSI in the 2016 case, while Calvert was owed money from defendant in the 2013 case. The trial court properly ignored the merits of that argument because it is an impermissible collateral attack on the judgment after bond forfeiture in the 2016 case.

A final decision by a "court of competent jurisdiction made and entered in a proceeding of which all parties in interest have due and legal notice and from which no appeal is taken cannot be set aside and held for naught by the decree of another court in a collateral proceeding . . . ." *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc*, 305 Mich App 460, 474;

853 NW2d 467 (2014) (quotation marks and citations omitted). In other words, "assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding[.]" *Id*. As noted, there is an exception to that rule where the first decision is made by a court, agency, or tribunal that entirely lacks jurisdiction regarding the matter decided. See *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992) ("When there is a want of jurisdiction over the parties or the subject matter, no matter what formalities may have been taken by the trial court, the action is void because of its want of jurisdiction. Consequently, its proceedings may be questioned collaterally as well as on direct appeal."). The Michigan Supreme Court, however, has distinguished between "errors in the exercise of jurisdiction" and the lack of jurisdiction:

> Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked. [*Bowie v Arder*, 441 Mich 23, 49; 490 NW2d 568 (1992), quoting *Jackson City Bank & Trust v Fredrick*, 271 Mich 538, 545; 260 NW 908 (1935).]

This Court clarified, stating that "lack of subject matter jurisdiction can be collaterally attacked[, whereas] the exercise of that jurisdiction can be challenged only on direct appeal." *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 564; 840 NW2d 375 (2013) (quotation marks and citation omitted; alteration in original).

Calvert, in this case, has appealed an order allowing setoff from the 2013 case. The substance of Calvert's appeal from the 2013 case focuses solely on the judgment after bond forfeiture, which was issued in the 2016 case. Calvert, similarly, has twice appealed the 2016 case to the circuit court, which were unsuccessful in altering the judgment. Calvert also filed two separate lawsuits in circuit court, seeking to be relieved from the judgment in the 2016 case, both of which were similarly unsuccessful. Now, in an appeal from an order in the 2013 case, Calvert has again attempted to alter the judgment in the 2016 case. Calvert has not argued the district court lacked jurisdiction in the 2016 case.

It is hard to imagine a clearer case of an impermissible collateral attack. See *Workers' Compensation Agency Dir*, 305 Mich App at 474. If Calvert believed the judgment after bond forfeiture in the 2016 case was entered against Calvert in error, it was required to make that argument in the case in which the judgment at issue was entered. Calvert cannot, in the 2013 case, seek to have the judgment from the 2016 case altered, absent a lack of jurisdiction in the 2016 case. See *Clohset*, 302 Mich App at 564. Considering Calvert has not even alleged a lack of jurisdiction in the 2016 case, the challenges related to the judgment after bond forfeiture in the 2016 case simply could not, and properly were not, entertained in proceedings in the 2013 case. See *id*. Indeed, even if Calvert were correct that the judgment in the 2016 case was improperly entered against the wrong party, Calvert still could not be successful because, as our Supreme Court clearly stated, "mere errors or irregularities in the proceedings, however grave, . . . will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked." *Bowie*, 441 Mich at 49 (quotation marks and citation omitted).

Consequently, the trial court did not err in concluding Calvert's claim of a lack of mutual indebtedness, which required an alteration to the judgment in the 2016 case, lacked merit as a collateral attack.[3]  See *id*.  Therefore, because such was Calvert's only argument against defendant's request for a setoff, the trial court properly granted defendant's motion.  The record is clear that, on the faces of the two judgments, defendant and Calvert had "mutual debts against each other," *In re Conservatorship of Murray*, 336 Mich App at 261 (quotation marks and citation omitted), warranting the setoff ordered by the trial court.[4]

## B.  STATUTORY INTEREST

Calvert argues the trial court failed to account for statutory interest on the judgment in the 2013 case before granting defendant's request for a setoff.  Calvert has abandoned this issue by failing to properly brief it.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (quotation marks and citation omitted).  Stated differently, "[t]he appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Wayne Co Employees Retirement Sys v Wayne Charter Co*, 497 Mich 36, 41; 859 NW2d 678 (2014) (quotation marks and citation omitted).  When a party fails to properly brief an issue, we can consider it abandoned and decline to address it. *Bronson Methodist Hosp*, 298 Mich App at 199.

---

[3] Rather than acknowledge the procedural errors in its arguments, Calvert presents a worst-case-scenario contention, asserting that allowing the judgment after bond forfeiture in the 2016 case to remain against Calvert would essentially destroy Michigan caselaw and statutes regarding bail bonds and agency.  The trial court's decision, and our affirmance of that decision, though, do not contain any substantive decision regarding the 2016 case and the judgment after bond forfeiture.  Indeed, there is nothing in the present analysis suggesting the district court's entry of the judgment against Calvert, as opposed to FCSI, was proper in the 2016 case.  Instead, the only material issue decided here is that a party cannot challenge a judgment after bond forfeiture in a collateral proceeding regarding setoff.  Calvert's worst-case-scenario creation, simply put, could not possibly be realized from our affirmance of the trial court.  Calvert is free to make the exact argument made in this case about agency and bail bonds at the proper time and place for such arguments, which is in a timely fashion in the case in which the judgment after bond forfeiture was entered.

[4] Considering this outcome, defendant's arguments regarding alternative grounds for affirmance have been rendered moot and we decline to consider them. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (holding that "[a] moot case presents nothing but abstract questions of law which do not rest upon existing facts or rights," and that appellate courts, generally, "will not entertain moot issues or decide moot cases") (quotation marks and citations omitted).

In its brief on appeal, Calvert has provided only a single paragraph of analysis, which does not include citation to any caselaw, statutes, or court rules. Instead, Calvert's brief merely announces the trial court erred by refusing to calculate statutory interest when setting off the judgments, and then declares Calvert is entitled to relief in that regard. Calvert has not identified the actual statute supporting the alleged interest, any caselaw related to whether setoff orders must specifically address statutory interest, or a court rule regarding procedures for calculating the differences in judgments during the setoff process. Having completely failed to do so, Calvert has abandoned this issue, and we decline to consider it. See *Wayne Co Employees Retirement Sys*, 497 Mich at 41; *Bronson Methodist Hosp*, 298 Mich App at 199.[5]

## C. ATTORNEY FEES AS A SANCTION

Calvert contends the trial court abused its discretion by failing to address Calvert's request for attorney fees as a sanction. Once again, Calvert has abandoned this issue by failing to properly brief it. As just discussed, we can refuse to review an issue when a party raises it without providing any analysis or proper citation to authority. *Wayne Co Employees Retirement Sys*, 497 Mich at 41; *Bronson Methodist Hosp*, 298 Mich App at 199. In this case, with respect to Calvert's arguments related to attorney fees as a sanction, Calvert has not cited any authority whatsoever in support of that claim. Calvert has not identified any caselaw, statutes, or court rules permitting it to collect attorney fees from defendant. Plainly, Calvert has attempted to "announce [its] position and leave it to this Court to discover and rationalize the basis for [its] claims," which Calvert was not permitted to do. *Id*. (quotation marks and citation omitted). Consequently, the issue has been abandoned, and we decline to consider it. See *Wayne Co Employees Retirement Sys*, 497 Mich at 41; *Bronson Methodist Hosp*, 298 Mich App at 199.[6]

---

[5] We note, though, Calvert has failed to acknowledge it is appealing an order of the trial court that was not a final order. Thus, the trial court has not yet ruled out accounting for statutory interest when it eventually enters a satisfaction of the judgment on behalf of defendant as a result of the setoff. This issue, then, also is not ripe for our review. "The doctrine of ripeness is closely related to the standing doctrine in that it focuses on the timing of the action." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 553; 904 NW2d 192 (2017) (quotation marks and citation omitted). In other words, "[t]he ripeness doctrine requires that a party has sustained an actual injury to bring a claim," and "[a] party may not premise an action on a hypothetical controversy." *Id*. at 554. Briefly, the trial court has not actually determined specific amounts by which the $100,000 judgment after bond forfeiture will be offset. When it does so, the trial court undoubtedly will determine the interest on the judgment in the 2013 case. Should it fail to do so, Calvert's argument would then ripen for our review. As of now, Calvert has merely presented "a hypothetical controversy" on which it is not permitted to "premise an action . . . ." *Id*. Indeed, considering the trial court has not ruled out adding in statutory interest when conducting the setoff, Calvert has not identified any actual error for us to correct.

[6] Notably, with respect to this issue, Calvert's failure to cite any legal authority is not only an abandonment of the issue procedurally, but also a fatal flaw substantively. Under applicable and binding caselaw, Calvert was required to identify a statute, court rule, or contract specifically

III.  DOCKET NO. 357716

In this appeal, plaintiffs challenge the trial court's order granting summary disposition in favor of defendant in the 2020 case.

## A.  RES JUDICATA

Plaintiffs argue that the doctrine of res judicata did not bar their lawsuit for equitable relief in the 2020 case.  We disagree.

### 1.  STANDARD OF REVIEW

Defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(8), arguing that res judicata barred the lawsuit.  The trial court did not indicate under which subrule it granted the motion; however, the court considered documentary evidence outside of the pleadings, which it is not permitted to do when granting summary disposition under (C)(8).  See MCR 2.116(G)(5).  And MCR 2.116(C)(7) is a proper subrule under which to grant summary disposition on the basis of res judicata.  See *Minicuci v Scientific Data Mgt, Inc*, 243 Mich App 28, 29; 620 NW2d 657 (2000).  Therefore, we will review the trial court's order as if it were decided under MCR 2.116(C)(7).

"We review de novo the circuit court's resolution of defendant['s] summary disposition motion." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014). "[S]ummary disposition pursuant to MCR 2.116(C)(7)" is proper when "the moving party was entitled to judgment as a matter of law." *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 518; 847 NW2d 657 (2014).  "Summary disposition may be granted under MCR 2.116(C)(7) when a

---

providing for the right to collect attorney fees.  See *Peterson v Oakwood Healthcare, Inc*, 336 Mich App 333, 359; 970 NW2d 389 (2021) ("The American rule for attorney fees provides that each party is responsible for its own attorney fees, unless there is a statute or court rule expressly authorizing the award."); see also *Pransky v Falcon Group, Inc*, 311 Mich App 164, 194; 874 NW2d 367 (2015) (allowing for attorney fees when permitted under a contract).  Calvert, as is obvious from its failure to cite any authority at all, has failed to do so.  Absent a ground for awarding attorney fees identified by Calvert, this argument simply must fail because the American rule, by which Michigan abides, required Calvert to pay its own attorney fees unless a specific exception existed.  See *Peterson*, 336 Mich App at 359; *Pransky*, 311 Mich App at 194.

Moreover, to the extent discernible from the record, Calvert appears to be relying on an allegation that defendant's motion for a setoff was frivolous.  However, as the trial court determined, and we now affirm, defendant was the prevailing party in the litigation regarding the setoff motion.  According to a recent decision by this Court, attorney fees are properly rejected when a party is not the prevailing party. *Kostreva v Kostreva*, 337 Mich App 648, 678; ___ NW2d ___ (2021) ("On every issue, [the] plaintiff is properly the prevailing party in this case, and this Court may reject [the] defendant's claim for attorney fees on that basis alone.").  The same is true of this case; because defendant was the prevailing party, Calvert's request for attorney fees as a sanction lacked merit.  See *id*.

claim is barred by res judicata or collateral estoppel." *Allen Park Retirees Ass'n, Inc v City of Allen Park*, 329 Mich App 430, 443-444; 942 NW2d 618 (2019). "In reviewing a ruling pursuant to subrule (C)(7), we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012) (quotation marks, citation, and alterations omitted). Further, "the circuit court must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor." *Stephens*, 307 Mich App at 227 (quotation marks, citation, and alterations omitted). Likewise, "[t]he applicability of the doctrine of res judicata constitutes a question of law that this Court also reviews de novo." *Beyer v Verizon North Inc*, 270 Mich App 424, 428; 715 NW2d 328 (2006).

## 2. LAW AND ANALYSIS

The trial court properly granted summary disposition in favor of defendant under MCR 2.116(C)(7) because plaintiffs' claims were precluded under the doctrine of res judicata.

Plaintiffs argue that the trial court erred by granting summary disposition in favor of defendant in the 2020 case. Plaintiffs sued defendant seeking an equitable exoneration from the judgment after bond forfeiture from the 2016 case. Plaintiffs are correct that, generally, such a case is permitted by statute and this Court's published decision in *Calvert Bail I*, 314 Mich App at 554-555, citing MCL 600.4835. Indeed, plaintiffs dedicate a great deal of their analysis in their brief on appeal to the issue already decided in *Calvert Bail I*, which allowed a separate suit to seek equitable remittance on a judgment after bond forfeiture when the underlying criminal defendant was apprehended outside of the 56-day safe harbor found in MCL 765.28. The trial court's decision and defendant's arguments do not require us to revisit that decision, nor would it be proper to do so. Instead, defendant and the trial court relied on the doctrine of res judicata when arguing for, and granting, respectively, summary disposition in this case.

Specifically, defendant contends the trial court properly granted summary disposition in favor of defendant because plaintiffs' lawsuit was barred after Calvert previously initiated the 2019 case, which had been dismissed. Defendant is correct. "The purpose of the doctrine of res judicata is to prevent multiple suits litigating the same cause of action." *King v Munro*, 329 Mich App 594, 600; 944 NW2d 198 (2019). Stated differently, "[t]he preclusion doctrine[] of res judicata . . . serve[s] an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *Allen Park Retirees Ass'n*, 329 Mich App at 444 (quotation marks and citation omitted). "The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Foster v Foster*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161892); slip op at 8 (citation omitted). "Michigan courts apply the doctrine broadly to bar not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *King*, 329 Mich App at 601 (quotation marks and citation omitted).

In the 2016 case, judgment after bond forfeiture was entered against Calvert when Johnson failed to show up in district court for his probable cause hearing. Calvert appealed the judgment

to the circuit court, but did so seven days too late. Thus, lacking jurisdiction because of Calvert's timing issues, the circuit court dismissed the appeal. Calvert then moved the district court for relief from judgment, arguing defendant was entitled to legal relief under MCL 765.28 because Johnson had been apprehended within the safe-harbor time period. The district court disagreed and denied Calvert's motion for relief from judgment. Calvert again appealed to the circuit court, and the circuit court again dismissed the appeal. This time, the circuit court did provide a reason for the dismissal. In any event, Calvert did not apply for leave to appeal either of those dismissals with this Court. The judgment after bond forfeiture issued in the 2016 case, then, had been finally and totally litigated.

As discussed above, though, Calvert was still entitled to seek equitable relief under MCL 600.4835 by filing a lawsuit for such relief in the circuit court. In 2019, Calvert did indeed file a separate lawsuit seeking relief from the judgment in the circuit court. Yet, despite being well aware of the sole available equitable remedy considering Calvert was the named plaintiff in the exact decision of this Court verifying such a lawsuit was permissible under the relevant statutes, *Calvert Bail I*, 314 Mich App at 554-555, Calvert's 2019 lawsuit sought only legal relief. Indeed, the 2019 case made almost all of the same arguments raised by Calvert in the 2016 case. Oddly, even though Calvert successfully sued defendant in the 2013 case, the 2019 case filed by Calvert named a 72nd District Court Judge as the defendant. Although Calvert named the defendant in that manner, the lawsuit clearly sought legal relief from the judgment after bond forfeiture, which was undoubtedly and statutorily mandated to be in favor of defendant. The circuit court dismissed the 2019 case on July 16, 2019. The written order of dismissal did not provide specific reasoning for the order, but cited the circuit court's reasons stated on the record. The record in question was not provided to the trial court in the 2020 case, nor has it been provided to us on appeal.

After the case had been dismissed, plaintiffs brought the present suit in 2020. The 2020 case, finally, sought equitable relief from the judgment after bond forfeiture issued in the 2016 case. The 2020 case even named the correct party, defendant. Despite additional plaintiffs being added to the case, namely FCSI and Banks, the lawsuit primarily sought relief from the judgment against Calvert. Plaintiffs argued Johnson had been apprehended without additional expenses from defendant, which was good cause under MCL 600.4835 to excuse Calvert from paying the judgment after bond forfeiture in the 2016 case. Rather than address the merits of the argument, defendant asserted plaintiffs' arguments were barred by the doctrine of res judicata because Calvert could have and should have raised these equitable arguments in the 2019 case. The trial court agreed and granted summary disposition in favor of defendant.

Recall that res judicata applies to bar a subsequent action when three elements are met: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Foster*, ___ Mich at ___; slip op at 8 (citation omitted). It is undisputed, in this appeal, that the circuit court's decision in the 2019 case was on the merits. Notably, although plaintiffs argued the dismissal was not on the merits during the trial court proceedings, they have not repeated that argument in this appeal. This is likely because the argument lacked merit considering, under MCR 2.504(B)(3), "[u]nless the court otherwise specifies in its order for dismissal, a dismissal under this subrule or a dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for failure to join a party under MCR 2.205, operates as an adjudication on the merits." Because the order of dismissal in the 2019 case did not "otherwise specif[y]," it was deemed to be on the

merits. MCR 2.504(B)(3). Therefore, the first element of the res judicata doctrine was fulfilled. See *id.*; *Foster*, ___ Mich at ___; slip op at 8.

The second element requires this Court to consider whether the 2019 case involved the same parties or their privies as the 2020 case. *Id.* Plaintiffs contend this element is not fulfilled because the 2019 case was against the "72nd District Court Judge" and not defendant. "In general, to be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Dep't of Environmental Quality v Sancrant*, 337 Mich App 696, 709; ___ NW2d ___ (2021) (quotation marks, citation, and alterations omitted). "The outer limit of the doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Id.* (quotation marks and citation omitted). When dealing with governmental entities, " 'Courts have . . . generally found that no privity exists between state and federal governments, between the governments of different states, or between state and local governments.' " *Id.* at 710, quoting *Baraga Co v State Tax Comm*, 466 Mich 264, 270; 645 NW2d 13 (2002) (alteration in *Dep't of Environmental Quality*). Even so, "there may be specific circumstances under which the state may be bound by a judgment to which a subordinate political division was a party and the state was not, such as when the subordinate political subdivision is found to have been acting as a trustee for the state." *Baraga Co*, 466 Mich at 270-271.

This case presents an unusual factual aspect not often seen in res judicata litigation. Typically, it is the legal entity who was not a party in the first litigation arguing it should not be bound to the result in that initial case. In this case, it is Calvert, who undoubtedly was a party in the 2019 case, arguing res judicata should not apply because *defendant* was not a party to the 2019 case. The trial court acknowledged this obscure circumstance, and attempted to reason around it, by noting it treated defendant as the real party in interest in the 2019 case, despite it not being named in the litigation. Indeed, the trial court expressed concern that, by naming the improper party in the 2019 case, Calvert was attempting to avoid application of the doctrine of res judicata as related to the 2016 case. Recall that, importantly, the 2019 case focused on the legal remedies available to Calvert, which already had been litigated to completion in the 2016 case.

While there certainly will be instances when a district court would not adequately represent the interests of a county to establish privity, this case is not one of them. Although Calvert named a district court judge as the defendant in the 2019 case, the complaint in that case made abundantly clear Calvert was attempting to escape enforcement of the judgment in favor of defendant county. Thus, for the purposes of this case, *as applied against Calvert*, the defendant in the 2019 case had a "substantial identity of interests" and a "working functional relationship" with defendant county. See *Dep't of Environmental Quality*, 337 Mich App at 709 (quotation marks and citation omitted). Indeed, considering it was defendant county's financial interest at stake in the 2019 case, the 72nd District Court Judge identified as the defendant by Calvert in the 2019 case was actually representing an interest held solely by defendant county. See *id.* Therefore, Calvert's attempts to escape res judicata by suing the wrong party in the 2019 case cannot be successful when the party actually named represented the interests of the true party in interest, defendant. Consequently, the second element of the res judicata analysis is fulfilled. See *Foster*, ___ Mich at ___; slip op at 8.

The final element to bar a claim under the doctrine of res judicata requires that "the matter in the second case was, or could have been, resolved in the first." *Id*. (citation omitted). "[T]he determinative question is whether the claims in the [second] case arose as part of the same transaction as did the claims in" the first case. *Adair v Michigan*, 470 Mich 105, 125; 680 NW2d 386 (2004). In other words, "[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, and whether they form a convenient trial unit." *Id*. (quotation marks, citation, and alterations omitted).

As discussed, the 2020 case was for equitable relief from the judgment after bond forfeiture issued in the 2016 case. Plaintiffs claimed Calvert was entitled to such equitable relief because Johnson had been apprehended, charged, convicted, and sentenced related to the crimes for which the bond was originally posted. The 2019 case, on the other hand, was nominally for a declaratory judgment that Calvert was not required to pay the judgment after bond forfeiture issued in the 2016 case. In that case, Calvert asserted it was entitled to have the judgment after bond forfeiture set aside because the legal requirements for doing so, under MCL 765.28, had been met by Johnson's apprehension in Knox County, Tennessee, in December 2016. The 2019 case, importantly, was brought in circuit court, which has jurisdiction over equitable issues.[7] See *O'Connell v Dir of Elections*, 316 Mich App 91, 101; 891 NW2d 240 (2016) ("[T]he circuit court is a court of general equity jurisdiction . . . .") (Quotation marks and citation omitted). Further, as this Court established in *Calvert Bail I*, 314 Mich App at 554-555, a suit for equitable remittance of a judgment after bond forfeiture is properly litigated in the circuit court. Thus, certainly, Calvert could have litigated its equitable claims in the 2019 case, which was brought in the circuit court. Moreover, the two claims "arose as part of the same transaction;" namely, Johnson being brought to justice after the judgment was entered against Calvert in the 2016 case. See *Adair*, 470 Mich at 125. Both cases relied on "facts [] related in *time, space, origin or motivation*, and" the two claims "form[ed] a convenient trial unit." *Id*. (quotation marks, citation, and alterations omitted). Briefly, in both cases, Calvert would be required to prove Johnson violated the terms of his release on bond, but had subsequently been arrested, convicted, and sentenced related to the charged crimes. The third and final element of the res judicata argument, then, is fulfilled. See *id*.

In an attempt to escape this conclusion, plaintiffs ask us to adopt an exception to the doctrine of res judicata when the first action was solely for declaratory relief. In support of that argument, plaintiffs cite three opinions from United States Circuit Courts of Appeals: (1) *Laurel Sand & Gravel, Inc v Wilson*, 519 F3d 156, 164 (CA 4, 2008) ("As to matters not declared, a litigant who solely sought a declaratory judgment in the prior proceeding is not precluded from bringing those claims."), (2) *Allan Block Corp v Co Materials Corp*, 512 F3d 912, 916 (CA 7, 2008) ("But there is an exception to res judicata for cases in which the only relief sought in the first suit is a declaratory judgment."), and (3) *Harborside Refrigerated Servs, Inc v Vogel*, 959 F2d 368, 372 (CA 2, 1992) ("Many jurisdictions recognize an exception to ordinary res judicata principles where, as here, the prior action involved only a request for declaratory relief."). Those

---

[7] Notably, the 2016 case was litigated in district court, which, under MCL 600.8315, "shall not have jurisdiction in . . . actions which are historically equitable in nature, except as otherwise provided by law."

decisions of federal circuit courts are not binding on this Court, but could be considered persuasive. *Johnson v Vanderkooi*, 502 Mich 751, 764 n 6; 918 NW2d 785 (2018) ("Although caselaw from the federal circuits and federal district courts is not binding on this Court, it may be considered for its persuasive value."). The parties agree a Michigan appellate court has not yet, in a published decision, directly addressed whether a similar exception exists in Michigan.

Despite the law regarding the argued exception being unclear in Michigan, plaintiffs' arguments must fail. This is because, even assuming this Court adopted the exception, it would not apply in this case. Importantly, the exception exists only when the second action pertained to issues the first declaratory judgment action did not address. See *Laurel Sand & Gravel*, 519 F3d at 164 ("[T]he preclusive effect of declaratory judgments was limited to matters actually declared by the judgment."); see also *Allan Block Corp*, 512 F3d at 916 ("Giving such a judgment preclusive effect would stymie a plaintiff who, having obtained a declaratory judgment, later sought— because the defendant thumbed his nose at the declaration—injunctive relief, an authorized and common sequel to a declaratory judgment."); see also *Harborside Refrigerated Servs*, 959 F2d at 372 ("Under this exception, the preclusive effect of the declaratory judgment is limited to the subject matter of the declaratory relief sought."). In the 2019 case, Calvert claimed to be seeking declaratory relief. However, the declaration Calvert sought was an exoneration of the judgment after bond forfeiture in the 2016 case. Notably, the relief Calvert again seeks in the 2020 case is an exoneration, albeit an equitable one this time, from the judgment issued in the 2016 case. Consequently, the subject matter of both the 2019 case and the 2020 case were the same. Therefore, even if the federal exception for declaratory judgment actions applied in Michigan, it would be of no assistance to Calvert. It could have and should have brought its equitable claims in the 2019 case. Its failure to do so barred it from doing so in the 2020 case under the doctrine of res judicata.

Because all of the elements of res judicata are fulfilled, the trial court properly determined that defendant was entitled to summary disposition. See *Foster*, ___ Mich at ___; slip op at 8.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-14-