*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STRATA ONCOLOGY, INC.,

      Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

      Respondent-Appellee.

FOR PUBLICATION
September 21, 2023
9:25 a.m.

No. 362431
Tax Tribunal
LC No. 2020-002555-TT

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

Petitioner, Strata Oncology, Inc., appeals as of right the Tax Tribunal's order denying Strata's motion for summary disposition under MCR 2.116(C)(10) and granting respondent, the Michigan Department of Treasury, summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTUAL BACKGROUND

Strata is a corporation formed in 2015 and incorporated in Delaware with its principal offices located in Ann Arbor, Michigan. Strata describes itself as a "precision oncology company" established to partner "with pharmaceutical companies for cancer drug development that will qualify for [Food and Drug Administration] approval." Strata defines "precision oncology" to include "the development of drugs that are effective for patients with very specific DNA and RNA profiles, but may not be effective for the broader population with the same type of cancer." Strata states that it assisted its partners by identifying "patients with a particular type of cancer and specific DNA and RNA traits in order to enroll them in the drug companies' human trials with the goal of obtaining FDA approval for the drug being tested." In pursuit of that goal, Strata operated the "Strata Trial." Strata explained that

> The ultimate objective of the Strata Trial is to prove that a targeted approach to cancer drug development and testing will result in the development and approval of more cancer treatment drugs than under the traditional approach, making molecular profiling the new standard of care in cancer testing, accelerating the U.S. Food and Drug Administration (FDA) approval for many new experimental precision medicine cancer drugs.

-1-

In 2019, the Treasury Department conducted a use tax audit on Strata for tax years 2015 through 2018, resulting in a determination that Strata owed a balance of $249,722 in taxes. The audit report stated that Strata did not pay sales tax for purchases of capital assets and expenses under the belief that these asset and expenses were exempt as materials used in industrial processing. The capital assets for which Strata did not pay taxes consisted mostly of lab equipment used to analyze patient specimens but also included office equipment, such as computers, shelving, and office furniture. The expenses for which Strata did not pay taxes consisted of lab supplies and equipment, chemicals, and test tubes.

In the course of the proceedings, the parties each brought motions for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Strata argued that summary disposition in its favor was proper because the company satisfied the elements necessary to qualify for the industrial processing exemption. It explained that under the applicable statute, MCL 205.94o(1)(c), the use tax does not apply to "[a] person, whether or not the person is an industrial processor, if the tangible personal property is used by that person to perform an industrial processing activity for or on behalf of an industrial processor." Strata argued that it is a "person" within the meaning of the statute, as well as an "industrial processor." Strata explained that the issue mainly turned on whether it is engaged in "research or experimental activities" within the meaning of the statute. Strata contended that it was engaged in such activities and was thus entitled to the use tax exemption.

In the Treasury's motion for summary disposition, it argued that its conclusions regarding the applicability of the use tax exemption should be upheld because Strata did not itself meet the definition of "industrial processor," and because Strata failed to establish that it had ever performed work for or on behalf of an "industrial processor" in tax years 2015 through 2018. The Treasury Department further argued that Strata was not engaged in "research or experimental activities" under MCL 205.94o because Strata's work does not change the composition or otherwise relate to any pharmaceutical drugs or products. The Treasury Department also argued that some of Strata's purchases were explicitly excluded from the industrial processing exemption, regardless of whether Strata was an "industrial processor" or engaged in "research or experimental activities."

The Tax Tribunal denied Strata's motion for summary disposition and granted the Treasury Department's motion for summary disposition. The Tax Tribunal determined that Strata did not meet its burden of proof to show that it used the tangible personal property to perform an industrial processing activity for, or on behalf of, an industrial processor so that it was entitled to claim the use exemption for industrial processing under MCL 205.94o. It explained that Strata only needed to meet the specific requirements of "research or experimental activities" under MCL 205.94o(3), and not the general requirements of MCL 205.94o(7)(a). Thus, said the Tribunal, the critical inquiry to determine whether Strata performed research or experimental activities on behalf of its partners turned on which products were at issue in this case. The Tax Tribunal agreed with the Treasury that the product at issue was the drug produced by the pharmaceutical companies, not Strata's so-called Strata Trial. The Tax Tribunal explained that a simple way of determining what product was at issue under the statute was to replace the word "product" in the statute with the terms "drug" and "Strata Trial." If the Tax Tribunal substituted in the term "Strata Trial," it became clear that the conduct that Strata performed was on its own behalf and was not subject to the exemption. However, if replaced with the term "drug," the conduct was to be performed for, or on behalf of, the industrial processor.

Having determined that the product was the pharmaceutical companies' trial drugs, the Tax Tribunal next addressed if Strata's activity was either (1) incident to the discovery or modification of the drugs or (2) was necessary for the product to satisfy a government standard or to receive government approval. The Tax Tribunal explained that Strata's activity did not meet the first definition because the drug compound was already developed by the pharmaceutical companies before Strata identified patients for drug trials. Likewise, the Tax Tribunal determined that Strata's activity was not necessary for the product to achieve FDA approval. The Tax Tribunal adopted Merriam-Webster's definition of "necessary," which is defined as "absolutely needed[.]" Under this definition, the Tax Tribunal determined that the conduct absolutely needed for government approval was a drug trial. However, the Strata Trial was not a drug trial, and was therefore not necessary to receive government approval. Instead, the Tax Tribunal explained that the Strata Trial merely enhanced the likelihood of a drug trial's success. Accordingly, the Tribunal concluded that Strata was not entitled to a use tax exemption and granted summary disposition to the Treasury Department. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews de novo a Tax Tribunal's decision to grant or deny a motion for summary disposition. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010). Here, summary disposition was granted pursuant to MCR 2.116(C)(10). A summary disposition motion brought under this subsection is granted when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). In evaluating the motion, "[t]he reviewing court should . . . consider[] the substantively admissible evidence actually proffered in opposition to the motion." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020) (quotation marks and citation omitted). This includes "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004).

This case also concerns questions of statutory interpretation. Questions of law, including questions of statutory interpretation, are reviewed de novo by this Court. *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). Additionally, Strata has raised a claim regarding the Tax Tribunal's jurisdiction to hear this case. Whether a court has subject-matter jurisdiction presents an issue of law that this Court also reviews de novo. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013).

### B. SUBJECT-MATTER JURISDICTION

As an initial matter, the Treasury Department argues that the Tax Tribunal lacked subject-matter jurisdiction to hear this case. We disagree.[1]

---

[1] "Defects in subject-matter jurisdiction cannot be waived and may be raised at any time." *Electronic Data Sys Corp v Flint*, 253 Mich App 538, 544; 656 NW2d 215 (2002).

The Tax Tribunal is granted jurisdiction by statute. *Nicholson v Birmingham Bd of Review*, 191 Mich App 237, 239; 477 NW2d 492 (1991). In the absence of statutory authority, the Tax Tribunal lacks subject-matter jurisdiction and "should not proceed further except to dismiss the action." *Electronic Data Sys Corp v Flint*, 253 Mich App 538, 544; 656 NW2d 215 (2002). Such defects are considered so serious that "a tribunal is duty-bound to dismiss a plaintiff's claim even if the defendant does not request it." *Id.*

The Treasury Department specifically argues that the Tax Tribunal lacked subject-matter jurisdiction because Strata failed to comply with MCL 205.22. Under this statute, a taxpayer must pay the uncontested portion of an assessment of the Treasury Department before perfecting an appeal in the Tax Tribunal:

> A taxpayer aggrieved by an assessment, decision, or order of the department may appeal the contested portion of the assessment, decision, or order to the Tax Tribunal within 60 days, or to the court of claims within 90 days after the assessment, decision, or order. *The uncontested portion of an assessment, order, or decision shall be paid as a prerequisite to appeal.* [MCL 205.22(1) (emphasis added).]

Moreover,

> The assessment, decision, or order of the department, if not appealed in accordance with this section, is final and is not reviewable in any court by mandamus, appeal, or other method of direct or collateral attack. [MCL 205.22(4).]

The statutory language of MCL 205.22(1) is unambiguous and requires that "[a]n aggrieved taxpayer must actually discharge the uncontested tax debt, by full payment, before appealing the contested portion of the tax assessment." *Toaz v Dep't of Treasury*, 280 Mich App 457, 461-462; 760 NW2d 325 (2008).

When addressing a tribunal's subject-matter jurisdiction, our Supreme Court has explained:

> A tribunal's subject-matter jurisdiction depends on the kind of the case before it, not on the particular facts of the case:

> Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending. The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry. Jurisdiction always depends on the allegations and never upon the facts. [*Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc*, 305 Mich App 460, 477-478; 853 NW2d 467 (2014) (quotation marks and citation omitted).]

In this case, Strata filed a petition challenging the Treasury Department's assessment for the years 2015 to 2018, contesting the entire tax assessment. During discovery, the Treasury Department

-4-

attempted to get Strata to admit that it no longer challenged the portion of the Treasury Department's assessment that determined that it owed use tax related to office furniture and furnishings. At that time, Strata denied that a tax deficiency would remain regarding these products if Strata prevailed on its claim. Following discovery, both parties moved for summary disposition under MCR 2.116(C)(10). In a response brief to the Treasury Department's motion for summary disposition, Strata conceded that items identified as office furniture and furnishings were not eligible under the industrial processing exemption. However, it noted that those items represented less than 1% of the total amount of taxes at issue in this case and could be handled after the Tax Tribunal decided the merits. In response, the Treasury Department moved for summary disposition under MCR 2.116(C)(4), alleging that the Tax Tribunal did not have jurisdiction over the case because Strata did not pay the uncontested portion of the tax assessment for office furniture and furnishings.

In determining that it had subject-matter jurisdiction, the Tax Tribunal explained that *no* portion of the assessment was admitted as valid or uncontested at the time Strata filed its petition. The Tax Tribunal further explained that it was unclear when Strata came to the realization that a portion of the assessment did not qualify for the exemption, and it would not second-guess when this occurred. Further, when Strata filed its petition, it was signed by Strata's attorney. As stated by this Court, "[t]he question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry." *MacDonald's Indus Prod, Inc*, 305 Mich App at 478. The Treasury Department asked the Tax Tribunal to look past the charges asserted in Strata's petition to the facts determined after discovery. However, pursuant to MCR 1.109(E)(5):

> The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.[2]

Looking at the nature of the issues raised in the petition, the Tax Tribunal determined that Strata sufficiently pleaded its petition to invoke the subject-matter jurisdiction of the Tax Tribunal. Strata contested the entire tax assessment in its petition. The Treasury Department has not alleged that Strata fraudulently pleaded that claim. See MCR 1.109(E)(5). Therefore, we conclude that the Tax Tribunal had subject-matter jurisdiction over Strata's claim when the petition was filed.

---

[2] When a Tax Tribunal rule does not exist, the Michigan Rules of Court apply. TTR 215.

## C. USE TAX EXEMPTION

Strata contends that its purchases were eligible for the industrial processing exemption to the use tax under MCL 205.94o(1)(c) and (3)(b) because it performed research or experimental activities for or on behalf of an industrial processor. We disagree.

The UTA imposes a tax for the "privilege of using, storing, or consuming tangible personal property in this state at a total combined rate equal to 6% of the price of the property . . . ." MCL 205.93(1). If the "department has reason to believe that any records maintained or returns filed are inaccurate or incomplete and that additional taxes are due, the department may assess the amount of the tax due from the taxpayer based on an indirect audit procedure . . . ." MCL 205.104a(4). "That assessment is considered prima facie correct for the purpose of this act and the burden of proof of refuting the assessment is upon the taxpayer." MCL 205.104a(4). Strata's burden of proof is a preponderance of the evidence. *ProMed Healthcare v Kalamazoo*, 249 Mich App 490, 494-495; 644 NW2d 47 (2002).

The UTA provides several exemptions to "avoid the double taxation of a product that would result from exacting both use and sales taxes." *TOMRA*, 505 Mich at 344. Relevant to this appeal, the UTA exempts certain industrial processing activity. MCL 205.94o. Property eligible for this exemption includes "[m]achinery, equipment, tools, dies, patterns, foundations for machinery or equipment, or other processing equipment used in an industrial processing activity and in their repair and maintenance." MCL 205.94o(4)(b). Office equipment used in an industrial processing activity is also eligible for this exemption. However, "[o]ffice equipment, including data processing equipment used for nonindustrial processing purposes" and "office furniture or office supplies" are not eligible for this exemption. MCL 205.94o(5)(b) and (c).

Also relevant to this appeal, eligible property is exempt from the use tax when sold to the following entities: "[a] person,[3] whether or not the person is an industrial processor, if the tangible personal property is used by that person to perform an industrial processing activity for or on behalf of an industrial processor." MCL 205.94o(1)(c).[4] An "industrial processor" is defined as "a person who performs the activity of converting or conditioning tangible personal property for

---

[3] A "person" means:

> an individual, firm, partnership, joint venture, association, social club, fraternal organization, municipal or private corporation whether or not organized for profit, company, limited liability company, estate, trust, receiver, trustee, syndicate, the United States, this state, county, or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context. [MCL 205.92(a).]

No party contests that Strata is a person for purposes of the industrial processing exemption.

[4] The UTA's provisions on the eligibility of property sold to entities under MCL 205.94o(1)(a) and (b) are not relevant to the issues raised in this appeal.

ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail . . . ." MCL 205.94o(7)(b). "Industrial processing" is defined as:

> [T]he activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state. Industrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage. [MCL 205.94o(7)(a).]

Seven activities are specifically defined as industrial processing activities. MCL 205.94o(3). Relevant to this case, Strata claimed that its activities fell under MCL 205.94o(3)(b), "research or experimental activities." The statute further defines "research or experimental activity" as:

> activity incident to the development, discovery, or modification of a *product* or a product related process. Research or experimental activity also includes activity necessary for a *product* to satisfy a government standard or to receive government approval. Research or experimental activity does not include the following:
>
> (*i*) Ordinary testing or inspection of materials or products for quality control purposes.
>
> (*ii*) Efficiency surveys.
>
> (*iii*) Management surveys.
>
> (*iv*) Market or consumer surveys.
>
> (*v*) Advertising or promotions.
>
> (*vi*) Research in connection with literacy, historical, or similar projects. [MCL 205.94o(7)(e) (emphasis added).]

As used in Subdivision (e), "product" "includes, but is not limited to, a prototype, pilot model, process, formula, invention, technique, patent, or similar property, whether intended to be used in a trade or business or to be sold, transferred, leased, or licensed." MCL 205.94o(7)(c).

Strata does not dispute that the property at issue was used, stored, or consumed in Michigan, but, instead, contends that the property is exempt from use tax under the industrial processing exemption, MCL 205.94o. Further, Strata does not contend that it is an industrial processor. Instead, Strata contends that it used its tangible personal property in research or experimental activity, MCL 205.94o(3)(b), for, or on behalf of, an industrial processor, MCL 205.94o(1)(c).

This Court's analysis begins with whether industrial processing occurred:

> It is only logical, therefore, to first determine whether "industrial processing" has occurred. Because "industrial processing" is defined by MCL 205.94o(7)(a), the analysis begins there. If "industrial processing" activity is not occurring under either MCL 205.94o(7)(a) or MCL 205.94o(3), the latter of which specifically enumerates certain activities that constitute "industrial processing," the analysis is complete and the taxpayer is entitled to no exemption. On the other hand, if "industrial processing" activity is occurring, it is then necessary to analyze the remaining provisions of MCL 205.94o, including but not limited to Subsection (2), to determine the measure of the exemption. [*Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 39; 869 NW2d 810 (2015).]

The UTA provides a general definition of "industrial processing," MCL 205.94o(7)(a), and lists separately specific activities that are considered industrial processing, MCL 205.94o(3). Strata contends, and the Tax Tribunal agreed, that Strata only needed to meet the specific requirements of MCL 205.94o(3), as opposed to also meeting the criteria laid out in MCL 205.94o(7)(a).

The Michigan Supreme Court answered the question whether activity that qualified for the use tax exemption under Subsection (3) would have to meet the temporal limitation included in the second sentence of the general definition of industrial processing listed under MCL 205.94o(7)(a). *TOMRA*, 505 Mich at 346. The second sentence of MCL 205.94o(7)(a) established a "temporal period during which industrial processing must occur, spanning from when the property begins movement from raw-materials storage into processing until the finished goods enter inventory storage." *Id*. at 345. In that case, the Treasury Department argued that the plaintiff was precluded from claiming a specific exemption under Subsection (3) because the plaintiff's activity fell outside of that temporal period. *Id*. at 348. The Court rejected this position, noting that it would create a conflict between the two provisions and would "lay waste to large swaths of Subsection (3)." *Id*. The Court concluded that conduct that met the criteria of Subsection (3) did not need to meet the temporal requirement of MCL 205.94o(7)(a). *Id*. at 351.

The Court did not specifically address whether there was a conflict between Subsection (3) and the first sentence of MCL 205.94o(7)(a) because the issue before the Court was limited to a conflict involving the temporal requirement. However, the Court discussed its previous decision in *Detroit Edison Co*, involving MCL 205.94o(3) and (7)(a):

> [W]e suggested that a taxpayer could claim an exemption either by satisfying the general definition of industrial processing in Subsection (7)(a) or by showing that it was engaged in one or more of the enumerated activities listed in Subsection (3). Most directly, we stated that "the statute also provides that certain specific activities that do not satisfy the general MCL 205.94o(7)(a) definition nonetheless constitute 'industrial processing' activity for purposes of the statute," such as the activity described in MCL 205.94o(3)(h). In other words, we made it clear that Subsection (7)(a) and Subsection (3) are discrete inquiries—Subsection (7)(a) does not establish a threshold requirement for an exemption as long as Subsection (3) applies. [*Id*. at 347 (citation omitted).]

Given this analysis, we agree with the Tax Tribunal that Strata's activity needs to meet the specifically defined activity in MCL 205.94o(3) without also meeting the requirements of MCL 205.94o(7)(a).

Strata claims that it engaged in activity that fell under the specific exemption of "research or experimental activities." MCL 205.94o(3)(b). According to MCL 205.94o(7)(e), "research or experimental activities" are defined as either: (1) "activity incident to the development, discovery, or modification of a product or a product related process" or (2) "activity necessary for a product to satisfy a government standard or to receive government approval." In both of these definitions, the activity performed relates to a product. For purposes of "research or experimental activity," "product" "includes, but is not limited to, a prototype, pilot model, process, formula, invention, technique, patent, or similar property, whether intended to be used in a trade or business or to be sold, transferred, leased, or licensed." MCL 205.94o(7)(c).

Interestingly, Strata contends that the "product" at issue in this case changes depending on whether this Court is analyzing Strata's activity pursuant to the first or second sentence of MCL 205.94o(7)(e). Specifically, Strata contends that when addressing whether its activity was "incident to the development, discovery, or modification of a product or a product related process," the product at issue was the "new targeted approach to conducting cancer drug trials" developed in the Strata Trial. The Tax Tribunal more plainly described Strata's argument to be that Strata saw its "Strata Trial" as the "product" contemplated under the first sentence of MCL 205.94o(7)(e). At odds with this argument, Strata contends that when addressing whether its activity was "necessary for a product to satisfy a government standard or to receive government approval," the product at issue was the pharmaceutical companies' trial drugs. The Tax Tribunal determined that the "product" at issue under either sentence of MCL 205.94o(7)(e) was the pharmaceutical companies' trial drugs.

Strata provides no support for its position that the "product" at issue can differ under the two sentences in MCL 205.94o(7)(e). Further, even if this Court were to agree that the "product" was the "Strata Trial," then Strata could not claim the exemption because it did not meet the criteria of MCL 205.94o(1)(c) that Strata perform "industrial processing activity *for or on behalf of* an industrial processor." (Emphasis added.) Strata has presented no evidence that the "Strata Trial" was "develop[ed], discover[ed], or modifi[ed]" for, or on behalf of, the pharmaceutical companies. MCL 205.94o(7)(e). Instead, Strata performs the Strata Trial for its own benefit as a service provider. Strata provides a service by sequencing patient specimens' DNA and RNA and reporting the findings back to the patient's oncologist. Strata identifies some, but not all, patients as candidates for pharmaceutical drug trials. Strata merely argues that its partners had an interest in the Strata Trial because these companies funded the project. The mere fact that pharmaceutical companies paid for this service does not establish that the Strata Trial was developed, discovered, or modified on behalf of these companies. Further, offsetting the cost of genomic sequencing, as two of the pharmaceutical company partners did, does not establish that the Strata Trial was developed, discovered, or modified for or on behalf of the pharmaceutical partners. Further, Strata does not argue nor does it point to evidence that the Strata Trial process of sequencing patients' genomic profiles itself was undergoing development, discovery, or modification. It merely states that it used genomic processing, not that it was transforming said process in any manner. Therefore, Strata's activity did not meet the first definition of "research or experimental activity."

If, instead, the "product" at issue under the definition of "research or experimental activity" is the drug trial, then Strata's activity still does not meet either definition under MCL 205.94o(7)(e). First, Strata's activity did not contribute to the development, discovery, or modification of the trial drug. When Strata matches patients to drug trials for its pharmaceutical partners, the drug being tested has already been manufactured. In most instances, the formulation of the drug compound will be the same before and after the drug trial. Therefore, Strata's provision of trial patients was not incident to the development, discovery, or modification of trial drugs.

Second, Strata has not established that its activity was "necessary" for the trial drug to "satisfy a government standard or to receive government approval." MCL 205.94o(7)(e). The Tax Tribunal adopted the dictionary definition of "necessary," which means "absolutely needed," or "required." *Merriam-Webster's Collegiate Dictionary* (11th ed). Strata asserts that the term "necessary" has taken on a peculiar meaning throughout tax and commercial law and that the dictionary definition is not appropriate in this context. In support of this, Strata points to the term "necessary" as used in IRC 162(a) that allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ." The United States Supreme Court and International Revenue Service have defined "necessary" in this context to mean "appropriate and helpful." *Welch v Helvering*, 290 US 111, 113; 54 S Ct 8; 78 L Ed 212 (1933); Internal Revenue Service, *Business Expenses Publication 535*, p 3 <https://www.irs.gov/pub/irs-pdf/p535.pdf> (accessed August 22, 2023).

The Legislature did not define the word "necessary" in MCL 205.94o(7)(e). When a word is not defined by statute, this Court assumes that the Legislature intended for the word to have its ordinary meaning. MCL 8.3a; *Ford Motor Co v Treasury Dep't*, 496 Mich 382, 391; 852 NW2d 786 (2014). Strata does not explain why this Court should not adopt the ordinary definition of "necessary" and instead adopt a technical definition. Moreover, Strata does not explain why the term "necessary" has a technical definition in the context of satisfying a government standard or receiving government approval. Therefore, we conclude that it is appropriate to adopt the dictionary definition of "necessary."

Under this definition, Strata's activity must be absolutely needed or required for its pharmaceutical company partners to obtain FDA approval for their trial drugs. Strata does not meet this criterion. To gain FDA approval, drug companies must test their trial drugs. Before partnering with Strata, its pharmaceutical company partners used the traditional approach for gaining FDA approval, namely by utilizing a nontargeted method to recruit cancer patients for drug trials. Strata's CEO estimated that under this traditional approach, its pharmaceutical partners were able to obtain FDA approval in approximately 10% to 20% of drug trials. The record does not indicate whether or how the Strata Trial impacted the FDA approval rate. Regardless, the fact remains that the traditional approach to identifying clinical trial patients remains an available path to get a trial drug approved by the FDA, indicating that Strata's activity is *not* required for its pharmaceutical partners to operate. Additionally, Strata was not the sole provider of patients for its pharmaceutical company partners, which also recruited trial patients from other providers, again indicating that Strata's work is not necessary within the meaning of MCL 205.94o(7)(e). Given this information and the fact that the formulation of the trial drug's compound generally does not change after Strata provides patients for drug trials, we conclude that Strata's activity is not required for its pharmaceutical company partners to obtain FDA approval. Instead, Strata is merely a service provider that may enhance the likelihood that the drug trials succeed. Therefore,

Strata has failed to meet its burden to show that its activity was necessary for a drug to satisfy a government standard or receive governmental approval.

### III. CONCLUSION

Because Strata did not meet the requirements for research or experimental activity, Strata did not conduct industrial processing for or on behalf of an industrial processor. See MCL 205.94o(1)(c) and (3)(b). Therefore, Strata failed to meet its burden to establish that it was entitled to a use tax exemption for industrial processing, and the Tax Tribunal correctly determined that the Treasury Department was entitled to judgment as a matter of law pursuant to MCR 2.116(C)(10). The remainder of the issues on appeal are moot. See *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 406; 834 NW2d 878 (2013).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick